**FIFTH AND WALNUT, Inc. et al. v.
LOEW'S INCORPORATED et al.**

No. 192, Docket 21206.

United States Court of Appeals
Second Circuit.

Argued March 14, 1949.

Decided July 19, 1949.

See also D.C.S.D.N.Y., 76 F.Supp. 64.

Monroe E. Stein, of New York City (Rogge, Fabricant, Gordon & Goldman, Herbert J. Fabricant, Murray A. Gordon, and Maurice A. Gellis, all of New York City, on the brief), for plaintiffs-appellants.

Edward C. Raftery, of New York City (O'Brien, Driscoll, Raftery & Lawler, J. Robert Rubin, George A. Raftery, Edward J. Toner, Jr., Benjamin Melniker, and Earle L. Beatty, all of New. York City, on the brief), for defendants-appellees Loew's Incorporated and others.

John F. Caskey, of New York City (Dwight, Harris, Koegel & Caskey, Austin C. Keough, Gordon E. Youngman, Charles F. Young, Sam Boverman, and T. Latta McCray, all of New York City, on the

brief), for defendants-appellees Twentieth Century-Fox Film Corporation, Paramount Pictures, Inc., and RKO Radio Pictures, Inc.

Abraham L. Freedman, of Philadelphia, Pa. (Robert W. Perkins and Howard Levinson, both of New York City, on the brief), for defendant-appellee Warner Bros. Pictures Distributing Corporation.

Louis D. Frohlich, of New York City (Schwartz & Frohlich, Everett A. Frohlich, and Max H. Rose, all of New York City, on the brief), for defendant-appellee Columbia Pictures Corporation.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal by plaintiffs from a defendants' verdict and judgment in a private action for damages and injunctive relief under the antitrust acts, 15 U.S.C.A. §§ 1, 2, 15, 26, comes to us on quite narrow issues of law. Plaintiffs claim two grounds for reversal: (1) the court's refusal of certain requests to charge, and certain language in the charge itself; and (2) the exclusion of certain of the adjudications in United States v. Paramount Pictures, Inc., D.C.S.D.N.Y., 70 F.Supp. 53, affirmed in part and reversed in part, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, which are alleged to be admissible under § 5 of the Clayton Act, 15 U.S.C.A. § 16. The basis of the action is the loss sustained by plaintiffs in the operation of the National Theatre in Louisville, Kentucky, by reason of the claimed conspiracy among defendants to refuse to this theatre the licensing of desirable moving picture films for show there. Jurisdiction was obtained in the Southern District of New York over the nine defendants now parties, and thereafter they moved for dismissal on the ground that Louisville was the more convenient place for trial. This motion was denied, D.C.S.D.N.Y., 76 F.Supp. 64, largely because of the delay in seeking the relief. There followed the lengthy jury trial whose unsuccessful outcome brings the plaintiffs here on appeal.

The individual plaintiff, Albert J. Hoffman, and the corporate plaintiff, Fifth and Walnut, Incorporated, successively operated the National Theatre, in Louisville, from September 3, 1943, to December 9, 1943, and from December 10, 1943, to July 11, 1946, respectively. There were four regular first-run theatres [1] operating in that city during the period in suit: the Rialto, the Strand, the Loew's-United Artists, and the Mary Anderson. The Fourth Avenue Amusement Co. operated the Rialto and the Strand, which were the only first-run outlets in Louisville for feature films distributed by defendants RKO Radio Pictures, Inc., Twentieth Century-Fox Film Corporation, and Paramount Pictures, Inc. The Loew's-United Artists Theatre was operated by the Louisville Operating Co., a corporation indirectly controlled, in equal shares, by defendant Loew's Incorporated and defendant United Artists Theatre Circuit, Inc. This theatre exhibited practically all the first-run features released by Loew's Incorporated and by defendant Columbia Pictures Corporation, and the majority of the first-run features distributed by defendant United Artists Corporation. (There is no connection between the two defendants United Artists Theatre Circuit, Inc., and United Artists Corporation other than the similarity of name.) The People's Theatre Company operated the Mary Anderson Theatre. It was the exclusive first-run outlet for pictures distributed by defendant Warner Bros. Pictures Distributing Corporation. A fifth theatre, the Brown Theatre, served as a move-over first-run theatre [2] under a joint agreement of the Fourth Avenue Amusement Co., the Louisville Operating Co., Inc., and the Broadway and Fourth Avenue Realty Co., which last organization owned the theatre. The profits

---

[1] "Runs are successive exhibitions of a feature in a given area, first-run being the first exhibition in that area, second-run being the next subsequent, and so on, and include successive exhibitions in different theatres, even though such theatres may be under a common ownership or management." United States v. Paramount Pictures, Inc., 334 U.S. 131, 144, 68 S.Ct. 915, 923, 92 L.Ed. 1260, note 6.

[2] "A moveover is the privilege given a licensee to move a picture from one thea-

from its operation were divided equally among the parties to the agreement, which also provided that "the same admission price shall be charged for such films as the price charged * * * in the first run theatres of such parties at the times when such films shall be exhibited at the Brown Theatre."

The evidence dealing with the move-over arrangement is the basis for plaintiffs' exception to the charge and to the denial of certain requests to charge. This arrangement was alleged to be one of the constituent conspiracies involved in the general conspiracy between and among the named defendants, and the exhibitors, who were not so named, since they were not amenable to the process of the district court.

It is of the essence of plaintiffs' argument that "but for the fact that a Jury had to pass upon the question of damages," a directed verdict would have been required. This contention, which we must reject, is the basis for their objections to the charge and the refusals to charge. Obviously what the plaintiffs are doing is to confuse evidence of conspiracy, to be evaluated by the jury, with demonstrated proof, to be accepted as final by the court. It was not the move-over arrangement itself that was condemned in United States v. Paramount Pictures, Inc., 334 U.S. 131, 159, 160, 68 S.Ct. 915, 92 L.Ed. 1260, but rather the discriminatory fashion in which move-over privileges were accorded by distributors to "large affiliated and unaffiliated circuits" and not to "small independent exhibitors." Plaintiffs make no claim here that they were denied the opportunity to move what first-run pictures they did receive over to the Brown.

■ Likewise, the joint operation of the Brown Theatre by one independent exhibitor and a subsidiary of one of the defendants (Loew's) was a type of activity which would not be unlawful unless a conspiracy to monopolize or restrain commerce by means of that activity was found by the jury to exist as to some of the de-

fendants in the present action. The condemnation of joint interests in the decision in United States v. Paramount Pictures, Inc., D.C.S.D.N.Y., 70 F.Supp. 53, is not to be regarded as a declaration that joint ownership as such is illegal. It was made in a suit between the United States and various distributors and exhibitors on the basis of the particular facts of that case, and the presence of some of the defendants in the two actions did not relieve the plaintiffs in the present action from the necessity of satisfying the jury that a conspiracy existed. Of course, no one could reasonably contend that every joint ownership of a theatre, irrespective of all surrounding circumstances, is a violation of the Sherman Antitrust Act; and no such decision has ever been made. Nor did the price-fixing clause in the agreement require any special attention from the judge in his charge or afford any basis for a recovery of damages in the present action. Not only was the testimony of the plaintiffs' manager Janecky that he fixed his own prices, but the only complaint was that plaintiffs were deprived of first-run pictures by a conspiracy against them among the defendants. We cannot see how price-fixing in this case between some of the defendants and the owner of the Brown Theatre if it involved any illegality —which may be doubted—affected the plaintiffs' claim to damages for failure to obtain pictures.

■ Lastly, there was no inherent wrong in the uniform practice at the Brown Theatre of taking the picture that had earned the highest gross on its first run in Louisville and arranging standard terms (20 per cent of box-office receipts up to $3,250, and 50 per cent of receipts above that figure) with all distributors. Although the operating agreement required that no better terms be given any other distributor than were accorded to Loew's, it cannot be assumed that such an agreement would restrain competition among the distributors for the move-over facilities of the Brown. All of the pictures simultaneously on first-run exhibition in Louisville competed for

---

tre to another as a continuation of the run at the licensee's first theatre." United States v. Paramount Pictures,

Inc., 334 U.S. 131, 160, 68 S.Ct. 915, 930, 92 L.Ed. 1260, note 13.

the move-over privilege on the basis of their comparative box-office records.

Plaintiffs stress the fact that use of the Brown Theatre, which had been standing vacant for some time before it was re-opened under the move-over arrangement, decreased, pro tanto, the demand for first-run exhibition space, since by taking the more popular pictures from first-run theatres before their first-run potentialities had been exhausted, the move-over made possible more frequent changes in the first-run bills. But so to hold is not to condemn the arrangement as in restraint of competition. The district court correctly assessed the significance of the evidence with regard to the move-over when it said in the charge:

"There has been considerable testimony in this case regarding: (a) The move-over pictures to the Brown Theatre from Loew's and the Rialto theatres; (b) The alleged uniform terms paid by the operator of the Brown move-over theatre to the various distributors; (c) The licensing of a second run in Louisville to the Kentucky Theatre by most of these defendants; and (d) The licensing of a third run to the Uptown Theatre by most of these defendants.

"This evidence was admitted solely to show the uniform conduct of the defendant distributors in licensing their pictures in Louisville, which the plaintiffs contend was another phase or part of the alleged combination and conspiracy of the defendants to monopolize and control the exhibition of pictures in the City of Louisville."

■ The court then went on to charge, in the language specifically objected to here by plaintiffs:

"Each distributor had a right acting independently and not in concert, or pursuant to any combination or conspiracy in violation of the anti-trust laws, to license a move-over run to the operator of the Brown Theatre.

"Illegality would only arise if you found from the evidence that the plan and method of operating the Brown Theatre as a move-over theatre, put into effect in 1936, was part of a plan or scheme among certain of the defendants and certain operators of first-run theatres in Louisville to monopolize the showing of first-run pictures or to restrain or control the business of exhibiting first-run pictures in Louisville."

Plaintiffs' objection to this portion of the charge is based on the notion that by participating in the move-over arrangement, to which only one of the defendants was a formal party, the distributor defendants all joined in a conspiracy in restraint of competition. But unless the move-over arrangement was intended, by itself or as part of a more inclusive plan, to keep plaintiffs out of the business of exhibiting first-run motion pictures, it was not in itself illegal and any or all the defendants were entitled to participate in it. This is not to say that the jury could not have found, particularly against the background of the motion picture industry as it is now known,[3] that the move-over arrangement was part of such a conspiracy. But the jury did not so find, and the alternative which they chose was properly offered to them in the court's charge.

■■ Having correctly indicated the applicability of the evidence on the move-over, the district court was justified in rejecting plaintiffs' disputed requests to charge. Certain of these are erroneous; the others are superfluous in the light of the charge actually given. Thus of the six in issue, the first four are instinct with the notion that the move-over arrangement might offend against the antitrust laws without regard to its effect, actual or potential, on plaintiffs' theatre. This is shown by the first one, as follows: "I charge you, as a matter of law, that if you find that Exhibits 87 and 87-A which are the agreements between Fourth Avenue Amusement Co., Broadway and Fourth Avenue Realty

---

3 As shown in United States v. Paramount Pictures, Inc., supra; United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; Schine Chain Theatres v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245; and other cases. See also McDonough and Winslow, The Motion Picture Industry: United States v. Oligopoly, 1 Stanford L.Rev 385, 1949.

Co., and Louisville Operating Co., Inc. for the operation of the Brown Theatre and the renewal thereof restrain competition in first-run exhibition in Louisville, that this is direct evidence and not circumstantial evidence of an illegal conspiracy between the parties to it."

That "direct" is intended to have greater force than merely as a contrast to "circumstantial," to mean at least "convincing," if not "complete," is shown by the next charge to the effect that, if the distributor defendants participated in the move-over arrangement and it constituted a restraint of competition in first-run exhibition in Louisville, then "this is direct evidence and not circumstantial evidence of an illegal conspiracy and if you find such illegal conspiracy to have been put into effect you are to return a verdict for the plaintiffs and against all of the defendants who participated therein." And the next two requests have the same vice of seeming to foreclose jury consideration, and to direct the verdict, as to the most important and decisive issue in the case.

■ If, however, less was contemplated by the writer of these charges, and they were designed only to state the rather obvious proposition that, if the agreement was an unlawful restraint of competition, then it was evidence from which an inference of an illegal conspiracy could have been drawn against those having knowledge and participating—as appears to be the intent of the remaining two in dispute—then the matter was amply covered in the charge. Thus the following adequate and succinct statement to the jury puts the matter better than these not overclear requests:[4] "If you find that the defendant distributors each had its first-run customer in Louisville and made no effort to license its pictures on a first-run to any other theatre in Louisville, and if you find that the operators of the Rialto, Loew's-United Artists, Mary Anderson, Strand and Brown theatres in Louisville each had a fixed source of supply

of first-run pictures from certain of the defendant distributors and did not seek to license the pictures of any other distributor on a first-run, then from such circumstances you may infer that this arrangement was the result of an unlawful conspiracy to monopolize the exhibition of first-run pictures and restrain trade or commerce in the exhibition of first-run pictures in the City of Louisville, to the exclusion of the plaintiffs from the exhibition of first-run pictures in Louisville."

■ The second ground on which plaintiffs appeal raises an important and interesting question of law. Section 5 of the Clayton Act, 15 U.S.C.A. § 16, provides: "A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken." Under the provisions of this section, plaintiffs made an offer of proof consisting of certain of the Findings of Fact and Conclusions of Law of the Expediting District Court in United States v. Paramount Pictures, Inc., D.C.S.D.N.Y., 70 F.Supp. 53,[5] and of the opinion and mandate of the United States Supreme Court, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, affirming in part, reversing in part and remanding the proceedings to the Expediting Court. The court, however, ruled the evidence inadmissible, as not a final judgment or decree within the statutory meaning.

There is of course no question that the cases have not even yet reached their final termination. Upon remand, certain of

---

[4] The last request here in issue—No. 47—is particularly unclear and seems to suggest again that the Brown Theatre move-over arrangement must be found inherently illegal.

[5] For a full record of the case, reference should also have been made to the extensive opinion for the Expediting Court, D.C.S.D.N.Y., 66 F.Supp. 323.

the defendants entered into consent decrees with the government; as to the others, lengthy hearings and deliberations are being had.[6] The strongest position of the plaintiffs is that the Supreme Court has accepted the basic findings of illegality and has sent the cases back for more complete relief; in short that the error found was of the nature to make the final result more favorable than otherwise to the plaintiffs' position. Several questions are suggested by the issue thus framed, such as whether the material is in reality relevant to the local controversy here presented (i. e., whether the estoppel between the parties which determines the prima facie character of the evidence has a legal bearing on the Louisville situation) or, if any of the proceedings are admissible, how much and what portion of them are to be set before the jury. We do not consider these, however, since upon as careful consideration as we can make we find ourselves in agreement with the trial judge that the government suit has not reached the stage where it can properly be considered within the statutory terms. We think this answer is indicated upon both legal and practical grounds.

While the issue has not been finally and authoritatively determined, yet both the statutory wording and the existing precedents require a definite terminus of the litigation. Thus the statute explicitly requires "a final judgment or decree" and does not refer, for example, to a final decision—a point of contrast made recently in the Supreme Court with respect to appealable orders. Cohen v. Beneficial Industrial Loan Corp., 1949, 69 S.Ct. 1221.[7] It must obviously be so far final that the rules of estoppel by judgment apply. Restatement,

Judgments, § 41 and comments a, d, and e, § 68 and comments, 1942. And since a second sentence of the statute provides that when such a proceeding is instituted by the United States the running of the statute of limitations on private rights of action based on any matter therein complained of "shall be suspended during the pendency thereof," it would seemingly follow that the suit should no longer be "pending." Acting on these principles and in the light of the statutory history, Judge Nordbye ruled in a persuasive opinion that a decree in a case on appeal is not admissible, Twin Ports Oil Co. v. Pure Oil Co., D.C.Minn., 26 F. Supp. 366. He has made a similar ruling as to this very Paramount case after the original opinion below, D.C.S.D.N.Y., 66 F. Supp. 323, had been filed. Duluth Theatre Corp. v. Paramount Pictures, Inc., D.C. Minn., 72 F.Supp. 625. See also Dickinson v. Twentieth Century-Fox Film Corp.,[8] D. C.W.D.Mo., No. 4728, March 7, 1949; Barnsdall Refining Corp. v. Birnamwood Oil Co., D.C.E.D.Wis., 32 F.Supp. 308. And we have held, in a fairly analogous case, that a decision of the Federal Trade Commission which had not become automatically the judgment of the Court of Appeals was not admissible. Brunswick-Balke-Collender Co. v. American Bowling & Billiard Corp., 2 Cir., 150 F.2d 69,[9] certiorari denied 326 U.S. 757, 66 S.Ct. 99, 90 L.Ed. 455, citing Proper v. John Bene & Sons, D.C.E.D.N.Y., 295 F. 729. While the statute is broadly remedial, yet it is obviously drastic in its consequences. It cannot too fairly be applied to cases where the action of the court may still remain in doubt. Amended Federal Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A., now emphasizes the tentative nature of district court rulings which are subject to re-

---

[6] Thus see McDonough and Winslow, supra note 3, at 401, 404–408.

[7] Stressing the language of 28 U.S.C.A. § 1291, allowing appeals "from all final decisions of the district courts," Mr. Justice Jackson says: "It is obvious that, if Congress had allowed appeals only from those final judgments which terminate an action, this order would not be appealable." 69 S.Ct. at page 1225.

[8] No opinion for publication.

[9] Thinking that the amended Federal

Trade Commission Act, 15 U.S.C.A. § 45 (g), applied to make the Commission order effective without the entry of an enforcing decree of the Court of Appeals, a majority of the court first ruled the evidence admissible, 150 F.2d at page 72; but when it was shown that this statute did not affect the Commission's orders in enforcing the antitrust acts, all the court agreed in the exclusion of the evidence. 150 F.2d at page 74.

vision up to their final determination. Here we have not yet even a tentative ruling after the remand.

The practicalities of the situation also point the same way. The problem will of course appear in acute form only in jury cases. In non-jury cases—and even in jury cases so far as the law is concerned—the decisions of the Supreme Court, whether or not affirming final judgments, will be controlling precedents, even though practically it may not be easy to separate law and fact. At any rate, sophisticated lawyers and judges will understand what the status of the government case is. But it will certainly not be easy to explain that (as in all fairness would be necessary, were the evidence to be admitted) to a jury of laymen. Thus, it may be substantially true that the government was more successful than its opponents in the appeal to the Supreme Court, and yet the question of how much and to what extent still remains. For example, the Supreme Court struck out the District Court's requirement that films be licensed on a competitive bidding basis, although it said, "The competitive bidding system was perhaps the central arch of the decree designed by the District Court." 334 U.S. at page 166, 68 S.Ct. at page 933, 92 L.Ed. 1260. And since the elimination of this feature might affect the cases in ways other than those expressly mentioned, it declined to limit the freedom of the District Court on remand to reconsider the adequacy of the decree to only those parts it had specifically indicated. Under the circumstances the wisdom of limiting admissibility to a final and definitely settled decree seems clear. While it may be that some cases might arise in which the action of an appellate court had gone so far as clearly to dispose of practically all the issues involved in a suit by the United States against defendants who are later being sued by a private party, and that in such an extreme situation the decree and findings in the latter suit would be admissible, the issues here left open by the Supreme Court seem to us so complex and vague that the District Court was justified in not allowing in evidence the decree or findings sought to be introduced by the plaintiffs.

We conclude that the trial was fair and the result, while not a necessary one, was nevertheless quite within the evidence. The plaintiffs offered evidence justifying inferences of joint action among the defendants, but the defendants offered vigorous controverting evidence as well as testimony to indicate that the troubles of plaintiffs' theatre were due more to its location, condition, and quality of patronage than to their acts. The plaintiffs had chosen to submit their case to a distant tribunal where jurors could be as little influenced by matters of local prejudice as would be possible anywhere. Having so chosen and received a full and proper trial, they must abide by the result.

Affirmed.