**RUSS TOGS, INC. et al., Plaintiffs,**

v.

**GRINNELL CORPORATION et al.,
Defendants.**

No. 67 Civ. 2594.*

United States District Court
S. D. New York.

Oct. 2, 1969.

\* And other actions in this court bearing S.D.N.Y. file numbers as follows:

| | | |
|---|---|---|
| 67 Civ. 2595 | 67 Civ. 2615 | 67 Civ. 3820 |
| 67 Civ. 2596 | 67 Civ. 2616 | 67 Civ. 4433 |
| 67 Civ. 2606 | 67 Civ. 2621 | 67 Civ. 4719 |
| 67 Civ. 2610 | 67 Civ. 2622 | 67 Civ. 4720 |
| 67 Civ. 2612 | 67 Civ. 2940 | |
| | | |
| 68 Civ. 573 | 68 Civ. 2741 | 68 Civ. 2780 |
| 68 Civ. 574 | 68 Civ. 2742 | 68 Civ. 2781 |
| 68 Civ. 659 | 68 Civ. 2743 | 68 Civ. 2782 |
| 68 Civ. 2361 | 68 Civ. 2744 | 68 Civ. 2789 |
| 68 Civ. 2509 | 68 Civ. 2746 | 68 Civ. 2793 |
| 68 Civ. 2647 | 68 Civ. 2765 | 68 Civ. 2794 |
| 68 Civ. 2669 | 68 Civ. 2766 | 68 Civ. 2795 |
| 68 Civ. 2670 | 68 Civ. 2774 | 68 Civ. 2828 |
| 68 Civ. 2671 | 68 Civ. 2775 | 68 Civ. 2829 |
| 68 Civ. 2722 | 68 Civ. 2776 | 68 Civ. 3229 |
| 68 Civ. 2723 | 68 Civ. 2779 | 68 Civ. 4629 |
| | | |
| 69 Civ. 1357 | 69 Civ. 1417 | |

And other file numbers as follows:

| | |
|---|---|
| N.D. Cal. Civ. 49577 | S.D.N.Y. 68 Civ. 4024 |
| W.D.N.Y. Civ. 1968–210 | S.D.N.Y. 68 Civ. 4025 |
| E.D. Pa. 68 Civ. 1478 | S.D.N.Y. 68 Civ. 4026 |
| E.D. Pa. 68 Civ. 1479 | S.D.N.Y. 68 Civ. 4027 |
| E.D. Pa. 68 Civ. 1489 | S.D.N.Y. 68 Civ. 4028 |
| E.D. Pa. 68 Civ. 1490 | S.D.N.Y. 68 Civ. 4029 |
| N.D. Ala. 67 Civ. 471 | S.D.N.Y. 68 Civ. 4038 |
| N.D. Ill. 68 C. 331 | S.D.N.Y. 68 Civ. 4358 |
| N.D. Ill. 68 C. 1667 | S.D.N.Y. 68 Civ. 4637 |
| N.D. Ill. 68 C. 1662 | S.D.N.Y. 68 Civ. 4638 |
| N.D. Ill. 68 C. 1663 | S.D.N.Y. 68 Civ. 4639 |
| N.D. Ill. 67 C. 1167 | S.D.N.Y. 68 Civ. 4357 |

Weil, Gotshal & Manges, Parker, Chapin & Flattau, and Liebman, Eulau, Robinson & Perlman, New York City, lead counsel for subscriber plaintiffs.

Casey, Lane & Mittendorf, New York City, lead counsel for competitor plaintiffs.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, lead counsel for defendants.

METZNER, District Judge.

Defendants in these private antitrust actions move for partial summary judgment with respect to any claims which may have accrued more than four years prior to the filing of the respective complaints on the ground that such claims are barred by the applicable statute of limitations. § 4B of the Clayton Act, 15 U.S.C. § 15b, provides:

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued."

The plaintiffs resist the motion, relying on § 5(b) of the Clayton Act, 15 U.S.C. § 16(b), which provides:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws * * *, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: * * *."

They contend that they commenced their actions "during the pendency" of the government's suit or within a year thereafter, and thus are entitled to the tolling period provided by § 5(b) in determining the bar of § 4B. At issue is the exact time when the government's suit ceased to "pend."

On April 13, 1961, the government filed a civil action against all four defendants in the District Court of Rhode Island, seeking injunctive relief for violations of the antitrust laws. United States v. Grinnell Corp., Civ. No. 2785. On November 27, 1964, the district court filed its findings of fact, conclusions of law and final decree in that action (236 F.Supp. 244), holding that defendants had violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. All parties appealed, the government because it deemed the relief inadequate and the defendants on both the merits and relief.

On June 13, 1966, the Supreme Court held that "The judgment below is affirmed except as to the decree. We remand for further hearings on the nature of the relief consistent with the views expressed herein." 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778. The mandate on the opinion issued on July 8, 1966 and was filed in the district court on July 11, 1966. On July 11, 1967, the district court entered a final judgment detailing the relief to be granted against defendants in which it was stated "The effective date of this Judgment shall be November 1, 1967."

Defendants argue that the government enforcement action ceased to pend on June 13, 1966, the date of the opinion of the Supreme Court. In their view, the tolling provision of § 5(b) expired on June 13, 1967, one year after the date of the Court's opinion. Therefore, any private suit instituted after that date should be governed by the four-year provision of § 4B. Plaintiffs take the position that the government action continued pending at least until July 11, 1967, the date of the district court's second decree, so that plaintiffs who filed on or before July 11, 1968 can survive this motion. Certain of these plaintiffs who filed after July 11, 1968 argue that the enforcement action was pending until September 9, 1967, the date when the time to appeal from the second decree expired.

It is defendants' contention that the opinion of the Supreme Court conclusively determined all questions of liability when it affirmed each finding of antitrust violation and the only remaining task for the district court was to work out the relief to be ordered against the defendants. As soon as liability has been determined, the argument runs, defendants' victims have all the information they need to decide whether to sue, and they can not be prejudiced if the one-year extension begins to run from that time. Furthermore, they contend that defendants will be unduly prejudiced during the years usually necessary to work out the final details of relief, since they will needlessly remain open to private actions on stale claims.

This liability-relief distinction fails for a number of reasons. In the first place, it does not fit well with the plain language of § 5(b). That section tolls the statute of limitations "during the pendency" of "any civil or criminal proceeding * * * instituted by the United States" and for a year thereafter. If the draftsmen had meant to toll the statute only during the pendency of that part of the proceeding in which liability is determined, they would presumably have used different language to make clear their intent.

A proceeding "pends" until it is terminated. The legislative history and case law support the intention to use this plain meaning in this statute. President Wilson's speech of January 20, 1914, asking Congress to give private litigants the benefits of government enforcement actions, urged that "the statute of limitations * * * be suffered to run against such litigants only from the date of the *conclusion* of the Government's action." 51 Cong.Rec. 1964 (1914) (emphasis added). The Senate report which accompanied the amendment of § 5(b) stated:

> "To alleviate such difficulties, the present bill would extend the tolling period not only for the *duration* of the Government's antitrust suit, but for 1 year thereafter." (Emphasis added).

Senate Report No. 619, 84th Cong. 1st Sess. (1955), 2 U.S. Code Cong. & Admin. News, pp. 2328, 2332.

Similarly, in Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561 (10th Cir. 1961), the court said at page 569:

> "The corollary purpose of the tolling provisions * * * is to vouchsafe the intended benefits of related government proceedings by suspending the running of the statute of limitations until the *termination* of the government proceedings, and allowing the private suitor one year thereafter in which to prepare and file his suit." (Emphasis added) (footnote omitted).

This court has held in an unreported decision that the statute is tolled in order to permit the private litigant to rely on the fruits of the government litigation, and that "These fruits have not ripened until they are embraced in a piece of paper called a final judgment as to which the appellate process has been exhausted." Gottesman v. General Motors Corp., Civ. 121–251 (S.D.N.Y. March 15, 1963).

In addition to the plain meaning of the language of the statute, the Supreme Court's broad application of the policy of § 5(b) in Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965), buttresses the finding that the tolling provision extends to the termination of the entire controversy. There the Court said at page 317, 85 S.Ct. at page 1477:

> "Whatever ambiguities may exist in the legislative history of these provisions [§§ 5(a) and 5(b)] as to other questions, it is plain that in § 5(b) Congress meant to assist private litigants in utilizing any benefits they might cull from government antitrust actions."

The court went on to list possible benefits other than the judgment itself which could be available to private litigants, such as pleadings, transcripts of testimony, exhibits and documents.

If defendants' liability-relief distinction is adopted, victims of an antitrust

violator may often have to decide whether or not to bring suit before all the benefits listed in the *Minnesota Mining* case, *supra,* are available to them. The prime benefit is use of the judgment as prima facie evidence as permitted by § 5(a) of the Clayton Act, 15 U.S.C. § 16 (a).[1]

In Fifth & Walnut, Inc. v. Loew's Inc., 176 F.2d 587 (2d Cir. 1949), the Court of Appeals held that in most cases this prime benefit was unavailable until final judgment. There the plaintiffs sought to use a district court decree in a government enforcement suit in which, on appeal, "the Supreme Court * * * accepted the basic findings of illegality and * * * sent the cases back for more complete relief." Id. at 593. The Court of Appeals held that the words "final judgment or decree" mean just what they say, and ruled against the plaintiff. It is inconceivable, under the broad purposes of § 5(b) to aid private litigants, that the government action has ceased to pend before there is a judgment available for use under § 5(a).

The Court of Appeals indicated in *Fifth & Walnut, supra,* that in an extreme situation a decree which did not dispose of every single issue of relief could possibly be admissible under § 5(a). In the instant case, as in *Fifth & Walnut,* this exception does not apply, for the appellate decision in the enforcement action left important matters affecting relief open for determination on remand. The Supreme Court's own opinion referred to the "extensive changes necessary in the decree." United States v. Grinnell Corp., 384 U.S. 563, 580, 86 S.Ct. 1698, 1708 (1966). The proceedings to decide the

details of the relief order may produce some of the benefits referred to in *Minnesota Mining, supra,* such as documents and evidence useful to private litigants. In the instant case this is obvious from the Court's discussion regarding the relief phase of the case. 384 U.S. 563, 577–580, 86 S.Ct. 1698. The suit should pend until all these benefits become available.

Finally, plaintiffs should be given a definite, easily identifiable date which fixes the end of the tolling period. In *Minnesota Mining, supra,* the Court stated that § 5(a) and § 5(b) "are not necessarily coextensive; they are governed by different considerations as well as congressional policy objectives." 381 U.S. at 318, 85 S.Ct. at 1477. Thus while it might be possible in the extreme situation referred to in *Fifth & Walnut, supra,* to have an admissible judgment under § 5(a) which is not final as to relief, such a judgment is not effective for § 5(b) purposes. Congressional policy is better served by a test which is easily applied. Neither plaintiffs nor the courts should be called upon in this area to make fine distinctions which would be required under defendants' liability-relief theory.

Defendants refer us to a number of cases antedating *Minnesota Mining* which adopt their relief-liability distinction.[2] The *Minnesota Mining* case, however, requires us to re-examine the prior law on this question as it has required reconsideration of other questions. Before the *Minnesota Mining* decision, for instance, the courts had held under § 5 (b) that an enforcement action ceased pending as to each defendant when a final

---

1. "A final judgment or decree * * * rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws * * * as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: * * *."

2. Baldwin v. Loew's Inc., 312 F.2d 387, 391–392 (7th Cir. 1963); Grengs v. Twentieth Century Fox Film Corp., 232 F.2d 325, 332 (7th Cir.) (dictum), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 77 (1956); Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401, 404 (S.D.N.Y.1961); Tague v. Balaban, 146 F.Supp. 356 (N.D.Ill. 1956).

decree was entered against him. See Sun Theatre Corp. v. RKO Radio Pictures, Inc., 213 F.2d 284, 292 (7th Cir. 1954); Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401, 404 (S.D.N.Y.1961) (by implication); Manny v. Warner Bros. Pictures, Inc., 116 F. Supp. 807, 809–810 (S.D.Cal.1953). Since the date of the *Minnesota Mining* decision, in order to preserve fully the benefits referred to by the Court and to provide an easily identified time when the tolling period ends, the courts have held that an enforcement action continues pending against each defendant until final decrees have been entered against all of them. See New Jersey v. Morton Salt Co., 387 F.2d 94, 98–99 (3d Cir. 1967), cert. denied, International Salt Co. v. New Jersey, Cayuga Rock Salt Co. v. New Jersey, 391 U.S. 967, 88 S.Ct. 2035, 20 L.Ed.2d 880 (1968); Michigan v. Morton Salt Co., 259 F.Supp. 35, 46–50 (D.Minn.1966), aff'd sub nom. Hardy Salt Co. v. Illinois, 377 F.2d 768 (8th Cir.), cert. denied, 389 U.S. 912, 88 S.Ct. 238, 19 L.Ed.2d 260 (1967). Further, it was held in Leh v. General Petroleum Corp., 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed. 2d 134 (1965), that, in applying § 5(b), the question whether a private suit is based on "matter complained of" in the enforcement action should not be determined, as it heretofore had been, by the constricting principles of collateral estoppel of § 5(a). Finally, the rule that the statute was not tolled as to individuals not named as defendants in the enforcement action, established by numerous cases prior to 1965, see 2 Trade Reg. Rep. ¶¶ 9159.40–.50, has been abandoned in recent decisions. *New Jersey, supra;* Hardy Salt Co. v. Illinois, *supra;* Vermont v. Cayuga Rock Salt Co., 276 F. Supp. 970 (D.Me.1967).

For all of the above reasons, the tolling period expires one year from the date when the appellate process is exhausted as to a final judgment. Exhaustion of appellate process includes the expiration of the time within which to take an appeal. In these cases the earliest date for expiration of the tolling of the statute is September 9, 1968.[3]

Settle order.

---

3. I do not have to consider the impact of the effective date of the judgment in deciding these cases.