### INTERNATIONAL SHOE MACHINE CORPORATION, Plaintiff, Appellant,

v.

### UNITED SHOE MACHINERY CORPORATION, Defendant, Appellee.

### No. 6043.

United States Court of Appeals
First Circuit.

March 11, 1963.

451

Breck P. McAllister, New York City, with whom Morton Myerson, Boston, Mass., Roger J. Hawke, Frank G. Dawson, New York City, Malloy, Sullivan & Myerson, Boston, Mass., and Donovan, Leisure, Newton & Irvine, New York City, were on brief, for appellant.

Ralph M. Carson, New York City, with whom Robert Proctor, Boston, Mass., Theodore Kiendl, New York City, Robert D. Salinger, John B. Reigeluth, Boston, Mass., and Louis L. Stanton, Jr., New York City, were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts dismissing the complaint entered upon a special verdict of the jury in an action brought by plaintiff-appellant, International Shoe Machine Corporation, against defendant-appellee, United Shoe Machinery Corporation, under Sections 4 and 5 of the Clayton Act (Act of October 15, 1914, c. 323, §§ 4 and 5, 38 Stat. 731, 15 U.S.C. §§ 15 and 16) to recover treble damages for violation of Section 2 of the Sherman Act (Act of July 2, 1890, c. 647, 26 Stat. 209, 15 U.S.C. § 2).

Plaintiff is a Massachusetts corporation which manufactures machinery for use in the "lasting operation" of shoe construction. Defendant, a New Jersey corporation, manufactures machinery for use in all phases of shoe construction, including that used in the lasting operation.

The complaint, which was filed on December 14, 1956, alleged that beginning some time prior to 1938 [1] and continuing to the date of the filing of the complaint, defendant had monopolized trade and commerce in the shoe machinery industry and the parts thereof in violation of Section 2 of the Sherman Act and had thus prevented plaintiff from obtaining a fair competitive share of the market in such industry. The complaint alleged a substantial loss of profits to plaintiff owing to the alleged monopolization and prayed judgment for three times the damages sustained.

The complaint further alleged that on February 18, 1953, in the case of United States v. United Shoe Machinery Corp., D.C., 110 F.Supp. 295 (aff'd per curiam 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954)), a final decree was entered in the United States District Court for the District of Massachusetts finding that appellee had violated the antitrust laws and further stated that "Pursuant to Section 5 of the Clayton Act, plaintiff intends to use said final decree against defendant as *prima facie* evidence as to all matters respecting which the said final decree would be an estoppel between the parties thereto."

The defendant answered and relying upon the 1955 amendments to the Clayton Act (69 Stat. 283, 15 U.S.C. § 15(b)), moved under Rule 56(b), 28 U.S.C., for partial summary judgment insofar as the plaintiff's complaint purported to assert any cause of action arising more than four years prior to the filing of the complaint, that is prior to December 14, 1952. The district court denied this motion and defendant appealed.

---

1. 1938 was the year of plaintiff's incorporation.

In our opinion reversing the district court, United Shoe Mach. Corp. v. International Shoe Mach. Corp., 275 F.2d 459 (1st Cir., 1960), we agreed with defendant that the statute of limitations precluded plaintiff from asserting any cause of action which might have accrued prior to December 14, 1952. The thrust of this ruling was to require plaintiff to demonstrate injury resulting from antitrust violations in the four year period immediately prior to the filing of the complaint—December 14, 1952 through December 14, 1956—if it was to be successful in the instant action.

At a pre-trial conference on August 21, 1961 plaintiff requested an order permitting introduction, at any time during the trial, of the final decree, parts of the findings of fact and the opinion in the so-called "Government case," [2] stating that said decree and findings should constitute *prima facie* evidence. Plaintiff also requested an order permitting introduction into evidence of the parties' background and competitive activities since 1938, and of customers' reasons for refusing to deal with plaintiff.

On October 24, 1961 the district court issued a pre-trial order which included the following:

"4. Decision on the admissibility of the decree, findings, or any portion whatever of the proceedings before Wyzanski, D. J. in the case of United States v. United Shoe Machinery Corporation, 110 F.Supp. 295, is deferred until the close of plaintiff's other evidence at the trial, at which time decision can be made in the light of this fully developed evidence. Until the Court decides what, if any, of said material is admissible, no reference to any aspect of the case of United States v. United Shoe Machinery Corporation, supra, shall be made in the hearing of the jury by the parties in either the opening or at any other time prior to said ruling.

2. This terminology has been consistently utilized throughout the instant proceedings in referring to United States v.

"5. Either party may introduce relevant evidence as to the background of the parties and of the shoe machinery industry at any time since the founding of plaintiff corporation in 1938, provided that nothing in this clause shall in any way modify or affect the provisions regarding order of proof or exclusion of evidence established by any other clause of this pretrial order."

At the close of plaintiff's evidence on monopolization and injury, the admissibility of the decree and findings in the Government case was again argued. On April 2, 1962 the court again held these to be inadmissible and amended the pre-trial order as follows:

"1. No part of the decree, findings of fact, or conclusions of law from United States v. United Shoe Machinery Corporation, supra, will be admitted in evidence as evidence of violation of the Antitrust laws of the United States; * * *."

Defendant moved for a directed verdict at the close of plaintiff's case and again upon the completion of the whole case. The court reserved decision, and submitted to the jury the following five special questions posed pursuant to the provisions of Fed.Rules Civ.Proc.Rule 49, 28 U.S.C., to which neither party objected:

"Question 1. Do you find by a preponderance of the evidence that during the period from December 14, 1952 to December 14, 1956, the defendant United Shoe Machinery Corporation committed acts of monopolization so as to control and dominate interstate trade and commerce in the distribution of shoe machinery (other than Dry Thread Sewing Machines) in the United States, to such an extent as to exclude actual and potential competitors from that field of interstate commerce? Answer yes or no.

United Shoe Machinery Corp., supra, and we shall adopt it herein.

"Question 2. Do you find upon a preponderance of the evidence that during the period from December 14, 1952 to December 14, 1956, defendant United Shoe Machinery Corporation committed acts of monopolization so as to control and dominate interstate commerce in side and toe lasting machines to such an extent as to exclude actual and potential competitors from interstate commerce in side and toe lasting machines? Answer yes or no.

"Question No. 3:

"Do you find upon a preponderance of the evidence that such acts of monopolization during that period were the proximate cause of injury to the business or property of the plaintiff? Answer yes or no.

"Question No. 4:

"Do you find upon a preponderance of the evidence that such injury as you have found to the business or property of the plaintiff in the period December 14, 1952 to December 14, 1956, did proximately cause monetary damage in the form of lost profits to the plaintiff in the period beginning December 14, 1952 and ending December 31, 1959, which are capable of reasonable calculation and determination?

"Question No. 5: What is the amount, if any, measured in dollars, which you find from the preponderance of the evidence that the plaintiff was damaged? State such amount or 'none' in the following blank space to indicate your finding."

The jury answered the first question—relating to defendant's monopolization in the distribution of shoe machinery generally—in the affirmative. However, it answered question 2—relative to defendant's monopolization in the special area of side and toe lasting machinery—in the negative. The jury also answered

"no" to question 3 concerning putative injury to plaintiff by defendant during the limitations period. Thereupon, it was unnecessary for the jury to answer questions 4 and 5. Judgment for the defendant was entered upon this verdict on May 14, 1962.

Plaintiff moved to vacate judgment and for a new trial on the grounds, *inter alia,* that the jury's answers to questions 1 and 2 were inconsistent and against the weight of the evidence, and that the decree and findings in the Government case should have been allowed in evidence. The trial court denied this motion. International Shoe Mach. Corp. v. United Shoe Mach. Corp., 206 F.Supp. 949 (D. C.Mass.1962).

Plaintiff's argument on this appeal rests principally on the asserted error of the trial judge in excluding the final decree and certain findings of fact and conclusions in United States v. United Shoe Machinery Corporation, supra, (hereinafter the "Government case"). It is plaintiff's contention that the decree, findings and conclusions were admissible under Section 5 of the Clayton Act and were "relevant" both to plaintiff's proof of monopolization during the limitations period from December 14, 1952 to December 14, 1956 [3] and to plaintiff's alleged damages.

The legislative history is clear that Congress enacted Section 5 of the Clayton Act to encourage treble damage suits by lessening the plaintiff's required proof and litigation expenses in the usually complex, time consuming and expensive area of antitrust litigation. See H.R.Rep. No. 627, 63 Cong.2d Sess. 14; S.Rep.No. 698, 63 Cong.2d Sess. 45; 51 Cong.Rec. 9270, 9490, 13851; see also Hamilton & Till, Antitrust In Action 83 (T N E C Monograph 16, 1940). To this end, Congress embodied as Section 5 a provision allowing treble damage plaintiffs to make use of judgments obtained by the Government in a prior action.

3. Plaintiff also contends that these matters are relevant as essential "background" evidence of conditions within the shoe industry prior to the commencement of the limitations period.

This provision permits private plaintiffs to utilize "A final judgment or decree" as *prima facie* evidence of "all matters respecting which [the] judgment or decree would be an estoppel as between the" defendants and the Government.[4]

The question here, as before the trial court, is the proper evidentiary effect to be accorded the prior Government decree. In Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951), the Court in defining the relevant principles as to the scope of Section 5 stated that the *prima facie* effect of a prior judgment " * * * extends only to questions 'distinctly put in issue and directly determined' in the [prior proceeding] * * * [and that] plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based." 340 U.S. at 569, 71 S.Ct. at 414.

■ Emich, consequently, indicated that recourse should be had to the principles of collateral estoppel in ascertaining the issues on which the prior judgment is evidence. See also, Fifth and Walnut, Inc. v. Loew's Incorporated, 176 F.2d 587, 593 (2nd Cir., 1949), cert. denied 338 U.S. 894, 70 S.Ct. 242, 94 L. Ed. 549. In effect, under traditional principles, the evidentiary impact of Section 5 should be limited to those issues which were "actually litigated and determined" by the judgment or decree in the prior case. See Restatement, Judgments, § 68(1) (1942).[5]

■ Moreover, for a private litigant to derive the benefits of Section 5 from a prior Government judgment, he must not only meet the estoppel requirements of the section but must also show that the former decree or judgment is *relevant* to his own cause of action. This is to say that it is not enough for a plaintiff to demonstrate that a defendant has violated the antitrust laws generally. Rather, he must show that his claimed injury stemmed directly and proximately from the same type of practice condemned in the prior Government action. Monticello Tobacco Co. v. American Tobacco Co., 197 F.2d 629, 631 (2nd Cir., 1952), cert. denied, 344 U.S. 875, 73 S. Ct. 168, 97 L.Ed. 678. See, Eagle Lion Studios, Inc. v. Loew's, Inc., 248 F.2d 438, 444, 445 (2nd Cir., 1957), aff'd per curiam by an equally divided Court, 358 U.S. 100, 79 S.Ct. 218, 3 L.Ed.2d 147 (1958); Shotkin v. General Electric Co., 171 F.2d 236, 238 (10th Cir., 1948). In short, before a plaintiff can invoke the mantle of Section 5 he must successfully meet both the statutory requirements of estoppel as well as the generic evidentiary test of admissibility—relevancy.

In excluding the prior decree, findings and conclusions, the trial court predicated its decision on the ground that:

"In the Government case Judge Wyzanski closed the taking of evidence as of a date in June of 1951, some 18 months prior to the period which is open to the plaintiff in the instant case, namely, the period December 14, 1952 to December 14, 1956.

"I do not read Judge Wyzanski's findings of fact as reflecting that any conduct of defendant which occurred

---

4. Section 5 states in pertinent part:

"(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

5. For a comprehensive review of collateral estoppel, see Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 840–50 (1952).

between December 14, 1952 and December 14, 1956 was put in issue or litigated in the Government case."

In sum, taking the closing of the evidence in the Government case—June 1951—as the determinative date, the trial court rested its decision on a difference in the time periods involved in the two actions.

In plaintiff's view, focusing on the date of "the close of the evidence" was the trial court's basic error. According to plaintiff, the date on which the evidence closes has no significance in terms of Section 5 'since the statute speaks in terms of a "final judgment or decree" which "shall be prima facie evidence." Consequently, according to plaintiff, in assaying a putative difference in the time periods of the actions under scrutiny, the determinative reference is to the date of the final decree.

Briefly stated, the chronology of the terminal stage of the Government case is as follows:

(1) Date of the close of evidence—June, 1951;

(2) Decree, findings of fact and conclusions of law entered by District Court—February 18, 1953;

(3) Affirmance by Supreme Court—May 17, 1954;

(4) Approval by District Court of a final plan for terminating the proscribed practices—June 1, 1955.

Upon examination of the foregoing chronology it is apparent, as pointed out by the district court, that the date of the close of the evidence antedates the limitations period open to plaintiff by some eighteen months. On the other hand, the other cited dates are within the limitations period—December 14, 1952 to December 14, 1956.

Selection of the determinative date has significant consequences. If the identical anti-competitive practices proscribed by the Government proceedings occurred during the same time period as that involved in the subsequent private action, there is little question that the estoppel requirements of Section 5 would be satisfied since the subject matter of the private suit could be regarded as but a contemporaneous manifestation of the activities condemned in the Government case. It would appear that this is the classical situation contemplated by Section 5. In such a case, with the estoppel requirements of Section 5 satisfied, relevancy could be assumed. However, if the pertinent practices involved in the Government case were adjudicated against the background of a time period different from that involved in the subsequent private proceeding, then, under traditional principles, Section 5's estoppel requirements seemingly would not be satisfied and a relevancy question would not arise.[6]

██ "Traditional" principles which would apparently render inapplicable invocation of collateral estoppel considerations include the rule that the passage of time may evoke change of circumstances which preclude the creation of an estoppel. See, e. g., City of Shreveport v. Shreveport Ry. Co., 38 F.2d 945, 69 A.L.R. 340 (5th Cir., 1930), cert. denied, 281 U.S. 763, 50 S.Ct. 462, 74 L.Ed. 1172, and the principle that matters adjudged as to one time period are not necessarily an estoppel as to other time periods. Cf., Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L. Ed. 898 (1948). As was stated in Third National Bank of Louisville v. Stone, Auditor, 174 U.S. 432, 434, 19 S.Ct. 759, 760, 43 L.Ed. 1035 (1899): "A question cannot be held to have been adjudged before an issue on the subject could possibly have arisen."

In many instances courts have noted a difference in the time periods involved in the Government and subsequent private actions in rendering the prior judgment inadmissible under Section 5. Park Neponset Corporation v. Smith, 258 F.

6. Unless this question became pertinent on the question of admitting the prior decree as "background" evidence. See infra.

2d 452 (1st Cir., 1958); Eagle Lion Studios Inc., v. Loew's Inc., supra; Paramount Film Distributing Corp. v. Village Theatre, 228 F.2d 721 (10th Cir., 1955); Robbinsdale Amusement Corp. v. Warner Bros. Pictures Distributing Corp., 141 F. Supp. 134 (D.C.Minn. 1955). Cf. Shotkin v. General Electric Co., supra; Wolfe v. National Lead Co., 15 F.R.D. 61 (N.D. Cal.1953), aff'd, 225 F.2d 427 (9th Cir., 1955), cert. denied, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955). As was stated in Orbo Theatre Corporation v. Loew's, Incorporated, 156 F.Supp. 770, 777 (D.C.D.C.1957), aff'd, 104 U.S.App. D.C. 262, 261 F.2d 380 (1958), cert. denied, 359 U.S. 943, 79 S.Ct. 725, 3 L. Ed.2d 677 (1959), "It should be emphasized that under the above quoted statute [Section 5] the [prior] decree is prima facie evidence only of a conspiracy covering the same area *and existing during the same time as that involved in the case on trial.*" (Emphasis supplied.)

In Park Neponset, supra—a treble damage suit—we approved the action of the district court in completely excluding from evidence the findings, conclusions and decree entered in a prior Government case. There we pointed out that while the excluded findings related to the competitive situation of 1945, the plaintiff's theatre did not commence operation until 1947. Consonant with the principles evoked in the above cited cases, the district judge in the instant case excluded the Government decree on the ground that the activities found illegal in the prior proceeding did not, in the language of Orbo Theatre Corp., supra, exist "during the same time as that involved in the case on trial," but, at least, some eighteen months prior thereto.

Plaintiff, while apparently conceding the correctness of the result in a case such as Park Neponset, supra, attempts to distinguish it on the basis that in that case the findings were "expressly stated" to show the situation in 1945 while the plaintiff did not commence operation, as noted above, until 1947. Here,

plaintiff continues, "the relevant findings in the Government case upon which appellant relies are not limited to any specific date." Plaintiff then seeks to buttress this distinction by noting that the findings of the district judge in the Government case "speak in the present tense throughout" and, consequently, "all of the * * * findings are made as of the date of their making on February 18, 1953 by the very words that are used." The net of this argument, of course, would be to move the Government action within the "same time period" as that open to plaintiff and obviate the obstacles to the Section 5 estoppel considerations canvassed above.

We are unwilling to accept plaintiff's contentions because they not only emphasize form over substance but ask us to close our eyes to the realities of what occurred in the Government case. It is undisputed that the last item of evidence which the district judge received in the Government case and upon which he rested his decision was admitted as of a date in June, 1951. There is no contention that any evidence touching on the environmental and competitive context of the shoe industry came to the court's attention in the interim period between the close of evidence and the announcement of findings. Perforce, quite apart from whether or not the findings of the trial judge "were expressly stated to show the situation" as of the date in June, 1951, when the evidence closed, they plainly could not reflect a competitive situation subsequent to that date, else they would be grounded on speculation and not evidence. Findings, to use Justice Frankfurter's phrase in another context, are "not drawn, like nitrogen, out of the air."[7] Rather, they can only have been quarried from the evidence adduced at the trial, upon which they must be bottomed and from which they cannot be severed without mutilating their significance. In the Government case, the development of the evidential complex terminated in June, 1951

7. Frankfurter, *Reflections on Reading Statutes*, The Record of the Association (of the Bar of the City of New York), Vol. 2, pp. 213, 235 (1947).

and so far as the findings and the decree are concerned, they can speak no later than this date.

■■ The Government case, to use the district court's own words, involved "a trial of prodigious length." Some five years elapsed between the filing of the complaint on December 15, 1947 and the close of the evidence in June, 1951. Thousands of exhibits, interrogatories, depositions and a wealth of testimony had to be sifted and evaluated by the district judge in making his findings and formulating an appropriate decree.[8] Appraisal and evaluation of the plethora of evidence required thoughtful consideration and this, in turn, required time, without which there could be neither the reflection nor the deliberation essential to a knowledgeable judgment. In the Government case this period extended for some eighteen months. In view of the scope and complexity of the issues there involved, the elapse of this time is not surprising. The point is that however long may be required for the trial judge to weigh the evidence, find the facts, decide the issues and formulate the decree, the ultimate judgment relates only to the period embraced by the evidence adduced at the trial. Cf., United States v. Waskowski, 158 F.2d 962 (7th Cir., 1947); Johnson v. Flemming, 264 F.2d 322 (10th Cir., 1959). Thus, evidentially speaking, though the decree was handed down in 1953 it spoke—so far as the determinative time period for our purposes is concerned—as of June, 1951.

Nor can we attach significance to plaintiff's argument that the trial judge's language was cast "in the present tense." We do not believe that considerations of estoppel should turn on the happenstance of style or syntax when the record clearly indicates that the language, though speaking in the present tense, related to a date at least eighteen months in the past.

It is of course true that Section 5 speaks in terms of "a final judgment" which "shall be prima facie." However, notwithstanding that fact, we believe that plaintiff reads too much into this language when it argues that the "trial court erred in giving any significance to the date of the close of the evidence [since] that date has no significance under the statutory language."

■ The statutory requirement that the judgment or decree be final before it may be admitted into evidence in a subsequent proceeding contemplates a "final disposition of the case, i. e., a final judgment by reason of failure to appeal within the statutory period, or a final judgment by reason of an affirmance of the appeal by the court of last resort." Twin Ports Oil Co. v. Pure Oil Co., 26 F. Supp. 366, 369 (D.C.Minn.1939), aff'd, 119 F.2d 747 (8th Cir., 1941), cert. denied, 314 U.S. 644, 62 S.Ct. 84, 86 L. Ed. 516 (1941). See, Fifth and Walnut, Inc., v. Loew's Incorporated, 176 F.2d 587, 592–594 (2nd Cir., 1949); Duluth Theatre Corporation v. Paramount Pictures, 72 F.Supp. 625 (D.C.Minn.1947).

These cases recognize the principle that until there has been a terminus to the litigation, the judgment or decree is not final and may not be utilized as prima facie evidence. Needless to say, if there remains the possibility that the result dictated by the action of an inferior court may be reversed by a higher tribunal, the evidentiary impact of the judgment will be delusively imprecise. To obviate such a contingency, the statute imports the salutary principle of finality of judgment. However, to say that a judgment must be final before a plaintiff may introduce it under Section 5 is not to imply that in assaying the

---

8. "The complaint [in the Government case] charge[d] the defendant with monopolizing and attempting to monopolize interstate trade and commerce in the shoe machinery industry from the year 1912 until the filing of the complaint on December 15, 1947. That span of years covers most of the corporate life of a company engaged in a specialized, skilled and technical trade." McAllister, The Big Case: Procedural Problems In Antitrust Litigation, 64 Harv.L.Rev. 27, 39 (1950).

estoppel requirements of this same action, a court must close its eyes or "attach no significance" to the date of the close of the evidence. We believe that this date may, as in this case, have a relevance and a significance in providing the chronological guidelines and fixing the time period limitations as to what "questions [were] 'distinctly put in issue and directly determined' [in the prior proceeding]." Emich Motors Corp., supra, 340 U.S. at 569, 71 S.Ct. at 414.

In the Government case the court found the defendant's leasing activity to be violative of the Sherman Act on the ground that certain provisions of the leases were inimical to the development of competition "in the context of the present shoe machinery market". Plaintiff has placed great reliance on the fact that the record in the instant case indicates that the same leases involved in the Government case were utilized by the defendant during the limitations period of the present case. And, in plaintiff's words, this fact makes the decree, findings and conclusions in the Government case *"relevant* prima facie evidence to which appellant is entitled under Section 5." Again, we believe that plaintiff confuses relevancy with the estoppel requirements of Section 5. As noted above, under Section 5, *relevancy* does not become material until a plaintiff has cleared the statutory hurdle of estoppel and, in this case, we do not believe that plaintiff has done so.

We do not read the trial court's ruling in the Government case as holding that leases of the kind utilized by the defendant are *per se* violations of the antitrust laws. Cf., International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947). Rather, in the language of the trial court: "In short, the leases themselves are not forbidden; only when they are used as an instrument for seeking [or maintaining] market control is the lessor to be charged with [restraint of trade or monopolizing]." United States v. United Shoe Machinery Corp., supra, 110 F.Supp. at 346.

Again, the violation in the Government case was found in the "context" of the shoe machinery field during the time period there under scrutiny; a period which, in our view, could be of a date no later than June, 1951 and, from many of the trial judge's specific references, was essentially bottomed on the defendant's competitive posture in the 1947–49 market.

In at least one significant facet, this was not the same "context" which existed in the shoe machinery industry—and specifically in the specialized market of side and toe lasting machinery at issue here— during the instant limitations period. Two of plaintiff's three major pieces of equipment were commercially introduced into the market after the close of the evidence in the Government case. One of these machines apparently embodied a technological break-through which produced spectacular commercial success for plaintiff; with a demand which far outstripped supply and which strained plaintiff's productive capacity to the utmost. This machine was apparently a highly coveted item in many segments of the industry and its availability was a competitive factor which was missing from the "context" of the side and toe lasting market in the Government case.

It cannot be gainsaid that in any meaningful appraisal of the adverse or anticompetitive effects of devices alleged to restrict the freedom of buyers to purchase from competing suppliers, the extent to which there is a diminution of competition in the relevant market, will depend upon the degree of need for the controlled product and the availability of adequate and desirable substitutes. The machines which plaintiff introduced into the post-1951 market were assuredly pertinent factors in any assessment of the context of the competitive environment and structure within the relevant market for side and toe lasting machinery. Failure to accord due emphasis to changed competitive conditions, such as those cited above, would amount to a judgment on the sum of the many market

relationships called competition which had scarcely more validity than "a guess in the dark." Standard Oil Co. v. United States, 337 U.S. 293, 322, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949) (dissenting opinion).

For the foregoing reasons we believe that the trial court was correct in holding inadmissible under Section 5 the decree, findings and opinion in the Government case.

The next question concerns the plaintiff's argument that these items should have been admitted as "background" evidence. In the words of plaintiff: "Even if we are incorrect in urging that the operative date under Section 5 is the effective date of the final decree on June 1, 1955, the decree and the findings and conclusions are still relevant and material as essential background to appellant's other proof of monopolization of lasting machines and of injury to its business or property in the limitations period itself."

■ Again we are unwilling to accept plaintiff's contention. While plaintiff continually stresses the relevancy of these matters, relevancy is not the only factor to be considered by a court in determining the admissibility of evidence of this character. Courts traditionally must weigh the probative value of the evidence sought to be admitted against the capacity for prejudice which the evidence might engender. Where the prejudice quotient is high, this fact will frequently render inadmissible evidence which— from a purely logical standpoint—may have a significant probative thrust. See generally, McCormick, Evidence, 315–21 (1954). As was stated in Loew's, Inc. v. Cole, 185 F.2d 641, 661 (9th Cir., 1950), cert. denied, 340 U.S. 954, 71 S.Ct. 570, 95 L.Ed. 688 (1951): " '[I]f certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an unfair prejudice to the opponent, * * * there is good ground for excluding such evidence, unless it is indispensable for its legitimate purpose.' " (Quoting Wigmore on Evidence.)

We believe this principle is particularly apposite in the present proceeding. Whether admitted purely as "background" evidence or not, evidence of a judicial determination of prior illegal conduct on the part of the defendant cannot help but have a great emotive impact on a jury. As Wigmore states: "The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury, in or out of court." 1 Wigmore, Evidence, § 57 (3d ed. 1940).

■ It is of course well settled that evidence that a defendant had, in the past, committed illegal acts is not admissible to show that he has a proclivity towards similar wrongs in a subsequent proceeding. See generally, Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv.L.Rev. 954 (1933); Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988 (1938). 1 Wigmore, Evidence, § 64 (3d ed. 1940).

■ Moreover, it is clear that if common law rules of admissibility were applied, a plaintiff would be unable to derive evidentiary benefit from the prior Government judgment. Buckeye Powder Co. v. E. I. DuPont de Nemours Powder Co., 248 U.S. 55, 63, 39 S.Ct. 38, 63 L.Ed. 123 (1918). Until the advent of Section 5, these judgments were unavailable to a private plaintiff. In making this change, Congress delimited use of the prior judgment to those precisely defined situations meeting the requirements of Section 5. Where, as here, a plaintiff does not meet the statutory requirements of Section 5, we believe that it would be unwarranted to allow it to attempt to do indirectly what it is foreclosed from doing directly. Absent the mantle of Section 5, if a plaintiff has the independent evidence to demonstrate antitrust violation and injury during the appropriate limitations period, then it would seem that he would not have to resort to a judgment obtained in a prior proceeding as "background." If he

does not have the independent evidence, we do not believe that he should be able to use the prior judgment as a crutch in the attempt to supply the essential elements of his action. It would be subversive of the purpose of Section 5 to permit the introduction of a prior decree or judgment "merely for its aura of guilt, or 'to imply new wrongdoing from past wrongdoing.'" Monticello Tobacco Co. v. American Tobacco Co., 197 F.2d 629, 632 (2nd Cir., 1952), cert. denied, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 678.

Finally, plaintiff argues at length that the trial court committed prejudicial error in limiting its development of the evidence in the pre-limitations period. Plaintiff urges that the trial court erroneously regarded the limitations period as controlling the admissibility of evidence.

■ It is of course true that the statute of limitations does not govern the admissibility of evidence and that this question is controlled by rules independent of a limitations question. Klein v. American Luggage Works, Inc., 206 F. Supp. 924, 936 (D.C.Del.1962). Cf., Continental Ore Co. v. Union Carbide, & Carbon Corp., 370 U.S. 690, 709, 710, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). However, in the Continental case, supra, the Supreme Court made clear that: "We do not mean that a trial court may not place reasonable limits upon such evidence or set a reasonable cut-off date, evidence before which point is to be considered too remote to have sufficient probative value to justify burdening the record with it." Id., at 710, 82 S.Ct. at 1416.

A careful examination of the record convinces us that the trial court understood and correctly applied both of the foregoing principles.

Thus, in his pretrial order of October 24, 1961, at the very outset of the trial, the court expressly stated: "Either party may introduce relevant evidence as to the background of the parties and of the shoe machinery industry at any time since the founding of plaintiff corporation in 1938, * * *," while, simultaneously indicating that the allowance of such evidence would be subject to its prior ruling against reference to the Government case. We believe that the court's rulings throughout the course of the trial were characterized by the desire to accommodate these competing considerations while delimiting the blanket of evidence—much of it repetitious and rambling—to manageable proportions. In this we believe it was successful.

■ In short, we believe that the trial court did not unduly restrict the presentation of the plaintiff's case. Moreover, even if it be conceded that the trial court may have been severe in certain of its rulings on plaintiff's proof, we believe that any error in this regard was cured by the jury's affirmative answer to question 1, supra.

We have considered the other points raised by plaintiff and believe that they do not require discussion in this opinion.

A judgment will be entered affirming the judgment of the district court.