Robert A. ARONSON,
Plaintiff, Appellee,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and Joseph McCloskey, Defendants, Appellants.

No. 88–1736.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1988.

Decided March 10, 1989.

Michael E. Robinson, Appellate Staff, Civ. Div., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Washington, D.C., Frank L. McNamara, U.S. Atty., Boston, Mass., and Leonard Schaitman, Washington, D.C., were on brief for appellants.

Robert A. Aronson, pro se.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

The Federal Department of Housing and Urban Development (HUD) appeals from a preliminary injunction, pursuant to 28 U.S.C. § 1292(a)(1) (Supp.1988), requiring it to provide Robert Aronson with lists of certain homeowners and other property owners who mortgaged their property under a federal mortgage insurance program. The program, in effect, requires property owners to pay a premium for insurance, keeps the premiums in a fund, and ultimately, when the insurance expires, refunds a share of any fund "surplus" to the property owner. *See* 12 U.S.C. §§ 1709–1711 (1982); 24 C.F.R. §§ 203.420–426 (1986). HUD keeps lists of thousands of these mortgagors, many of whom (the record suggests) will ultimately receive a "surplus" share amounting to some $200 or $300. HUD sometimes fails to locate individual mortgagors to whom it owes money. And, Aronson wants HUD to give him a list of those whom HUD has failed to find, updated to provide the names of those unfound mortgagors to whom HUD has owed refund money for one year or more. Aronson then traces these people himself, informs them of the refund they are entitled to, and charges them 35 percent of the refund as payment for his services.

We previously considered the legal question of whether, and when, the law permitted Aronson to obtain this information. *Aronson v. U.S. Department of Housing and Urban Development*, 822 F.2d 182 (1st Cir.1987) (*Aronson I*). We held that "Exemption 6" of the Freedom of Information Act, 5 U.S.C. § 552(b)(6) (1982), which allows the agency to withhold information where release would constitute "a clearly unwarranted invasion of personal privacy," permitted HUD to withhold the refund information for one year. During that year, we found that the interest in keeping personal financial information private outweighs any interest in disclosure. HUD itself must have an undisturbed opportunity to return the complete amount of the refund to the mortgagor, before a private entrepreneur is given the chance to provide the mortgagor with only two-thirds of his share. The second year, however, posed a more difficult problem. We noted that HUD had tried for a year and failed to locate the mortgagors. We emphasized that the record as to HUD's second year efforts was "murky," "vague," and without indication that HUD was "actively pursuing" the missing mortgagors. *Id.* at 187. We concluded that, in light of those two circumstances, the need to "assur[e] the disbursement of these funds" strongly favored public disclosure. And, we held that HUD could therefore keep the names confidential only for one year, not two. Subsequently HUD turned over to Aronson all names of the people owed money for more than a year, *i.e.*, those up to September 30, 1986, one year prior to October 1987, when the judgment in the case became final.

The case before us involves another Aronson request, a request he made in May 1988, for all names of people owed refunds up to May 1987. The government, despite *Aronson I*, refused to disclose the second year, May 1986–May 1987 names. Aronson brought this law suit; and the government defended on the grounds that it had subsequently improved its second year search procedure. Its affidavits indicate, with reasonable specificity, that HUD's new second year search procedures include matching the names of the unfound mortgagors

with 1) the Internal Revenue Service's computer data base of taxpayer address information, 2) the address-forwarding files of the U.S. Postal Service, and 3) names in Transunion Credit Corporation's credit reference computer. HUD then sends new notices to mortgagors it has located.

The district court in this case concluded, despite these new procedures, that it should grant Aronson a preliminary injunction requiring HUD to give Aronson all "second year" names. Although the court wrote that "[t]here is no showing that [HUD's] new [second year] methods are any more efficacious than the old," it seemed to base its decision on its view that "the finding and ruling by the court of appeals [in *Aronson I*] is preclusive of relitigation in a collateral proceeding." The court, referring to the traditional requirements for granting a preliminary injunction, *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981), said that "[t]he plaintiff is likely to succeed on the merits because he has already won a judgment." It added that "[t]he balancing of harm and the weighing of the public interest has already been done by the court of appeals [in *Aronson I*] in favor of the plaintiff."

While we fully understand how the district court could have reached its conclusions, we nonetheless find, after re-examining both our prior opinion and the affidavits, that the government has raised a significant issue in respect to changed circumstances. Our opinion in *Aronson I* emphasized the closeness of the question of privacy versus disclosure in the second year and the importance of HUD's failure to demonstrate the adequacy of its second year search procedures. *Aronson I* suggested that if those procedures were adequate, the interest in channelling refunds to mortgagors (at a price of a one-third commission) would no longer outweigh the interest in keeping personal information confidential. And, the affidavits here suggest that the new procedures may be so different from those described in *Aronson I* as to at least warrant a reconsideration of the question. *Cf. Farnum v. U.S. Dept. of Housing and Urban Development*, 710 F.Supp. 1129 (E.D.Mich.1988) (finding for HUD and distinguishing *Aronson I* on the basis of the agency's improved second year procedures).

Since the circumstances may have changed significantly, "collateral estoppel" no longer applies. *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir.1983); *International Shoe Machine Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449, 455 (1st Cir.), *cert. denied*, 375 U.S. 820, 84 S.Ct. 56, 11 L.Ed.2d 504 (1963). And, the "balance of harms," *Planned Parenthood, supra*, also shifts radically. To issue the preliminary injunction discloses the names, permanently injuring the interest HUD seeks to protect; to deny the preliminary injunction harms Aronson only by potentially delaying his obtaining the information he seeks (should he eventually prevail). For these reasons, we believe that HUD should have further opportunity to explain to the district court its new second year proceedings, how they differ from the old ones, and whether they are significantly more effective. Aronson should have appropriate opportunity to contest those claims, and to demonstrate the degree to which the extra delay may ultimately lead to fewer refunds.

The issuance of the preliminary injunction is *Reversed*, and the matter is *Remanded* for further proceedings consistent with this opinion.