912 F.2d 463
 59 USLW 2182, 1990-2 Trade Cases 69,165
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SEWELL PLASTICS, INC.,
v.
The COCA-COLA COMPANY, d/b/a Coca-Cola USA, Southeastern
Container, Inc., Aberdeen Coca-Cola Bottling Company,
Alabama Coca-Cola Bottling Company, Inc., Biscoe Coca-Cola
Bottling Company, Inc., Carolina Coca-Cola Bottling Co.,
Inc., Charleston Coca-Cola Bottling Co., Coca-Cola Bottling
Company Consolidated, Coca-Cola Bottling Company of
Anderson, South Carolina, Inc., Coca-Cola Bottling Company
of Asheville, NC, Coca-Cola Bottling Company of Mobile,
Coca-Cola Bottling Company of Nashville, Inc., Coca-Cola
Bottling Company of Roanoke, Inc., Coca-Cola Bottling
Company of Wilson, Inc., Coca-Cola Bottling Company United,
Inc., Coca-Cola Bottling Works of Tullahoma, Inc., Columbia
Coca-Cola Bottling Company, Columbus Coca-Cola Bottling
Company, Dorchester Coca-Cola Bottling Company, Durham
Coca-Cola Bottling Company, Inc., Eastern Carolina Coca-Cola
Bottling Company, Inc., Fayetteville Coca-Cola Bottling
Company, Hampton Bottling Works, Inc., Lincolnton Coca-Cola
Bottling Co., Mid South Coca-Cola Bottling Company,
Orangeburg Coca-Cola Bottling Company, Inc., Plymouth
Coca-Cola Bottling Co., Inc., Rock Hill Coca-Cola Bottling
Co., Inc., Roddy Manufacturing Company, Sanford Coca-Cola
Bottling Company, Tarboro Coca-Cola Bottling Company, Inc.,
the Atlanta Coca-Cola Bottling Company, the Coastal
Coca-Cola Bottling Company, the Coca-Cola Bottling Company
of Johnson City, Defendants-Appellees,
and
Wilmington Coca-Cola Bottling Works, Inc., Defendant.
 No. 89-3329.
 United States Court of Appeals, Fourth Circuit.
 Argued April 3, 1990.
Decided Sept. 4, 1990.
As Amended Sept. 20, 1990.
Rehearing and Rehearing In Banc Denied Oct. 2, 1990.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. James B. McMillan, Senior District Judge. (CA-86-363-C-C-M)
 Peter Aron, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City (Argued), for appellant; Alan T. Gallanty, Thomas M. Mueller, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, William L. Rikard, Jr., Parker, Poe, Thompson, Gage & Preston, Charlotte, N.C., on brief.
 Jonathan Mitchell Jacobson, Coudert Brothers, New York City, William M. Dreyer, The Coca-Cola Company, Atlanta, Ga., for appellees; Carolyn T. Ellis, David A. Schwartz-Leeper, Coudert Brothers, New York City, W. Thomas Haynes, Steven F. Hauser, The Coca-Cola Company, Atlanta, Ga., E. Osborne Ayscue, Jr., Norvin K. Dickerson, III, L. Martin Wright, III, Smith, Helms, Mulliss & Moore, Charlotte, N.C., on brief.
 W.D.N.C., 720 F.Supp. 1196.
 AFFIRMED IN PART AND REMANDED IN PART.
 Before K.K. HALL, PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an action by Sewell Plastics, Inc. (Sewell), a manufacturer of plastic soft drink bottles, alleging anti-trust and state-law unfair trade practices claims against the Coca-Cola Company (Coca-Cola), Southeastern Container, Inc. (Southeastern), and a number of Coca-Cola's licensed bottlers (the bottlers). Sewell appeals from the district court's grant of summary judgment in favor of all the defendants on its various claims. We affirm.
 
 
 2
 * Coca-Cola sells syrups and concentrates to the defendant bottlers under license to bottle and sell its soft drink products in the southeast. The license agreements grant to each bottler the exclusive right to bottle and sell Coca-Cola products within a specific territory, as authorized by the Soft Drink Interbrand Competition Act, 15 U.S.C. Secs. 3501 et seq. (authorizing territorial divisions among soft drink bottlers).
 
 
 3
 Sewell manufactures plastic bottles (PET bottles) widely used by many soft drink bottlers, including the defendant bottlers in this action. In 1981, various of these bottlers told Sewell that unless Sewell could provide two-liter bottles for $200 per thousand, the bottlers would join together to manufacture their own bottles. When Sewell refused to meet this price demand, the bottlers joined together in 1982 and organized Southeastern as a cooperative to manufacture and supply the bulk of their PET bottle requirements. Under their contracts with Southeastern, the bottlers agreed to purchase 80% of their plastic bottle requirements for a five-year period. The contract further obliged the bottlers to accept Southeastern's set price for the first year, after which the bottlers could purchase more than 20% of their requirement elsewhere only by proving that two other suppliers offered lower prices over a six-month period, and that Southeastern was unable to meet, within sixty days, an average of the two lowest prices. The bottlers also agreed that Southeastern would charge all contract bottlers the same price, and that transportation costs to bottlers located at different distances would be equalized so that no owner-bottler would enjoy a lower transportation cost by reason of its proximity to Southeastern.
 
 
 4
 Coca-Cola was intimately involved in Southeastern's formation and operation. As part of its USA Operational Business Plan for 1982-84, Coca-Cola implemented an "operational/strategic ownership plan" to "encourage formation of co-ops where economically feasible." Pursuant to this plan, in early 1981, Marvin Griffin, then head of Coca-Cola's Bottler Operations Department, encouraged bottlers to pursue their own manufacture of bottles with Coca-Cola's help and support. Coca-Cola agreed to guarantee debts generated by Southeastern's formation. After Southeastern's formation, individual bottlers who balked at the idea of cooperative manufacture were called before a Southeastern board meeting held at Coca-Cola headquarters. Two such bottlers subsequently entered contracts with Southeastern. When Southeastern contract-bottlers were occasionally unable to meet Coca-Cola's quality specifications, the specifications were relaxed by Coca-Cola to enable the bottlers to honor their supply contracts with Southeastern.
 
 
 5
 Sewell brought this action against Coca-Cola, Southeastern, and the participating bottlers alleging a number of claims: (1) that entering into and implementing the requirements and freight equalization contract constituted a conspiracy to form and the formation of a combination in restraint of trade in violation of Sec. 1 of the Sherman Act, 15 U.S.C. Sec. 1; (2) that the bottlers' agreement to purchase 80% of their requirements from Southeastern, thus potentially foreclosing 40% of the market for PET bottles in the Southeast, constituted an attempt to monopolize and monopolization of a line of commerce in a distinct geographic market in violation of Sec. 2 of the Sherman Act, 15 U.S.C. Sec. 2; (3) that the requirements contract constituted an exclusive dealing arrangement in violation of Sec. 3 of the Clayton Act, 15 U.S.C. Sec. 14; (4) that the bottlers' ownership of Southeastern stock had the effect of substantially lessening competition in violation of Sec. 7 of the Clayton Act, 15 U.S.C. Sec. 18; and (5) that this conduct violated various provisions of the North Carolina Unfair Trade Practices Act, N.C.Gen.Stat. Secs. 75-1 et seq. Sewell sought $17 million in damages and permanent injunctive relief.
 
 
 6
 Southeastern answered and counterclaimed on allegations of fact related to Sewell's claims. Extensive discovery, yielding a voluminous record, followed and both sides in due course moved for summary judgment.
 
 
 7
 In May of 1988, the district court granted partial summary judgment in favor of all the defendants, holding that the defendants' conduct was not per se illegal under the antitrust laws invoked, but leaving open the question of violation under a Rule of Reason analysis.
 
 
 8
 Following refusal by this court to entertain an interlocutory appeal certified under 28 U.S.C. Sec. 1292(b), the district court resumed consideration of the defendants' pending motions for summary judgment on the Sherman Act and other claims. Concerned that Sewell probably had failed so far to produce a forecast of evidence demonstrating an adverse effect on competition, an essential element of all the remaining state and federal claims, the district court ordered all summary judgment motions to be reargued. The focus of the reargument was the effect of the defendants' activities on competition in the relevant market. Following the reargument the district court concluded that, although it had not "heard information that justifies denying the defendants' Motion for Summary Judgment," it would yet deny the motion without prejudice to its renewal and ordered that trial on all the unrelated claims go forward.
 
 
 9
 After the trial began with counsel making opening statements to the jury, defendants again moved for summary judgment. This time, the district court orally announced its decision to grant defendants' motions.[1] After the court announced its decision, Sewell requested and was allowed to file additional documentary evidence of injury to competition and the defendants were permitted to file responsive material along with proposed "findings of fact and conclusions of law" supporting the grant of summary judgment.[2] After considering the massive submissions, the court on August 25, 1989, rendered an opinion which: (1) vacated its May 1988 order to the extent the order denied the defendants' motion for summary judgment; (2) granted the defendants' motion for summary judgment, dismissing Sewell's claims in their entirety; (3) directed entry of final judgment under Fed.R.Civ.P. 54(b); and (4) stayed Southeastern's counterclaims against Sewell pending final determination of any appeal from the district court's final judgment.
 
 
 10
 This appeal by Sewell, pursuant to Fed.R.Civ.P. 54(b), followed.
 
 II
 
 11
 As a threshold matter, we address Sewell's assertion of error in the district court's exclusion of certain evidence. The evidence related to a price-fixing conspiracy between defendant Asheville Coke and certain non-party Pepsi bottlers in Asheville's exclusive territory, and a separate, unrelated conspiracy between Anderson Coke and non-party Anderson Pepsi, both of which resulted in guilty pleas by the parties involved. The evidence is uncontradicted that these conspiracies were wholly unrelated to Southeastern. Sewell admitted that no defendant other than Anderson and Asheville were involved in the conspiracies.
 
 
 12
 Not only would introduction of this evidence have worked to prejudice the other thirty-three defendants who were not involved in these conspiracies, this evidence was properly excluded for Sewell's failure to carry its "burden of demonstrating that the conduct underlying those prior judgments had a direct, logical relationship to the conduct at issue in this case." International Shoe Mach. Corp. v. United States Mach. Corp., 315 F.2d 449, 459 (1st Cir.1963). The district court clearly acted within his discretion in excluding this evidence.
 
 III
 
 13
 In its initial Order, Sewell Plastics, Inc. v. Coca-Cola Co., 720 F.Supp. 1186 (W.D.N.C.1988), rejecting as a matter of law Sewell's claim of a per se violation of Sec. 1 of the Sherman Act, and its later Memorandum of Decision, 720 F.Supp. 1196, rejecting as a matter of law all of Sewell's remaining federal and state claims, the district court accurately and comprehensively analyzed the summary judgment record and properly applied controlling substantive and procedural principles in granting the defendants' motion for summary judgment. Its core determinations were that on the basis of material facts of record as to which there was no genuine dispute, defendants' conduct did not as a matter of law constitute a per se violation of Sec. 1 of the Sherman Act; that Sewell had failed to produce a forecast of hard evidence from which a trier of fact, properly instructed on the substantive law and the burden of proof, rationally could find that the defendants' challenged activities had an actual or probable adverse effect on competition in the relevant market; and that in any event, on the undisputed facts of record, Sewell could not as a matter of law establish "anti-trust injury," an essential element of the federal and state claims. Because, for reasons cogently given by the court, one or more of these determinations was dispositive of all of Sewell's federal and state claims, the court found each of them in turn properly subject to dismissal by summary judgment.
 
 
 14
 Having reviewed the record, the parties' briefs, and the district court's memorandum of decision, and having heard oral argument, we find no reversible error in the district court's disposition. Accordingly, we affirm the grant of summary judgment in favor of the defendants on the opinion of the district court. Sewell Plastics, Inc. v. Coca-Cola Co., 720 F.Supp. 1196 (W.D.N.C.1989). The case will be remanded for further proceedings on the pending counterclaims.
 
 
 15
 SO ORDERED.
 
 
 
 [1]
 Sewell argues that the district court abused its discretion by sua sponte reconsidering its May 6, 1988, summary judgment motion without ten days notice. We hold that this was not an abuse of discretion for reasons sufficiently explained by the district court. See Sewell Plastics, Inc. v. Coca-Cola Co., 720 F.Supp. 1196, 1215 (W.D.N.C.1989)
 
 
 [2]
 Sewell suggests that the district court, picking up on the defendants' submissions, impermissibly "found" facts in considering the defendants' motion for summary judgment. There is no merit to this suggestion. Though the court expressly indicated that it was "finding" certain material facts, see 720 F.Supp. at 1205, it is obvious that what it was doing was following the recommended procedure of identifying for the record those material facts that it "found" to be not in "genuine issue," hence proper predicates for granting summary judgment "as a matter of law." See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n. 6 (1986)