Soterios PAPAIOANNOIU

v.

HELLENIC LINES, LTD.

Civ. A. No. 81–5076.

United States District Court,
E.D. Pennsylvania.

Aug. 24, 1983.

---

Paul V. Isicrate, Philadelphia, Pa., for plaintiff.

Robert Mickle, Rawle & Henderson, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, a seaman, has brought this action pursuant to the Jones Act, 46 U.S.C. § 688, alleging that he suffered serious injuries as a result of the negligence of his employer, Hellenic Lines, Ltd. ("Hellenic") and the unseaworthiness of the vessel on which he was working at the time of the accident. Hellenic has filed a motion to dismiss, contending that this court lacks subject matter jurisdiction over the instant action. For the reasons hereinafter set forth, the Court will deny defendant's motion to dismiss for lack of jurisdiction. Defendant has also filed a motion to dismiss on the basis of international comity, contending that this action was already litigated in the courts of Greece and a decision adverse to the plaintiff has been rendered and affirmed. Plaintiff contends that the Greek litigation was a criminal proceeding inapplicable to this case. The Court will schedule a hearing concerning this issue.

A hearing was held concerning defendant's motions on June 9, 1983. At the hearing, the parties were directed to take appropriate discovery and to report the information gathered to the court as soon as possible. Based on the evidence presented at the hearing and the subsequent discovery conducted in this matter, the Court finds the following facts to be uncontested.

Plaintiff is a citizen and domiciliary of Greece. He entered into his contract of employment with the defendant in Greece. The defendant is a corporation organized under the laws of Greece with its principal place of business in Piraeus, Greece. The plaintiff's employment contract contains a choice of law clause which provides that the law of Greece shall govern any claim of the seaman arising in tort. Plaintiff was injured on May 2, 1980, while the M/V Hellenic Splendor was docked in New York. The Hellenic Splendor is registered in Greece and sails under the flag of Greece.

Hellenic was once owned by Pericles G. Callimanopoulos ("Pericles"), a Greek citizen residing in Connecticut and administering Hellenic from an office in New York for 35 years. Pericles died in 1980. Control of Hellenic remains vested in the Callimanopoulos family. Pericles' son, Gregory Calli-

manopoulos, ("Gregory") is the current head of Hellenic. He maintains an apartment in New York. In connection with his administration of Hellenic, Gregory also spends significant amounts of time in London and Piraeus. About forty (40%) percent of Gregory's time is spent in New York. In 1980 Hellenic established an American corporation, Hellenic American Agencies, Inc. ("Hellenic American") a general steamship agency organized under the laws of New York. Hellenic American does not own ships but acts as a logistical organizer and agent for Hellenic's shipping in the United States. Hellenic has approximately 30 vessels which regularly call upon United States ports and transport goods between the United States and other parts of the world. These Hellenic vessels frequently carry goods being bought or sold by the United States government (*see* Deposition of Jerry Joseph DiMaggio, Hellenic American vice-president of operations, June 24, 1983 at 4–10, 12–20, 28, 47). Hellenic American has offices in New York, New Orleans and Houston. Hellenic American has approximately sixty (60) employees in New York, sixty (60) in New Orleans and two (2) in Houston (*Id.* at 5–7). When Gregory is in New York, he and other representatives of Hellenic meet regularly with officials of Hellenic American in order to coordinate their business activities (*Id.* at 13). Hellenic shares office space with Hellenic American in New York. Hellenic has approximately twenty (20) employees based in this country (*Id.* at 14). Hellenic's approximately thirty (30) vessels which regularly call on U.S. ports spend approximately one-third of their time in U.S. waters (*Id.* at 25). Repair of these vessels frequently takes place at U.S. ports but major repairs are performed in Greece (*Id.* at 62–63).

Based on this evidence, Hellenic argues that this Court lacks subject matter jurisdiction to adjudicate this dispute. (There is no question that Hellenic is subject to the personal jurisdiction of this Court. Hellenic regularly conducts business in the Eastern District of Pennsylvania and throughout the United States). Hellenic contends: (1) that it is not an employer within the mean-

ing of the Jones Act, 46 U.S.C. § 688; and (2) that Greek law, not United States law applies to this case and that the Jones Act therefore is inapplicable, removing any federal question jurisdiction from this case (federal question jurisdiction constitutes the only possible basis for jurisdiction in this case since neither plaintiff nor defendant is a citizen of the United States, thereby precluding the possibility of diversity jurisdiction; (*see* 28 U.S.C. § 1332); and (3) that principles of comity between nations require this court to dismiss plaintiff's complaint since plaintiff has already litigated the matter unsuccessfully in Greece.

The Jones Act, 46 U.S.C. § 688, provides in relevant part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply ... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or which his principal office is located.

As the Third Circuit has noted, "[a]lthough § 688 used the term 'jurisdiction,' it has been construed to be a venue statute. *Panama R. Co. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924). It incorporates the venue provision of 28 U.S.C. § 1391(c)." *DeMateos v. Texaco, Inc.,* 562 F.2d 895 (3d Cir.1977). Title 28 U.S.C. § 1391(c) permits a corporation to be sued "in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." *See Pure Oil Co. v. Suaraz,* 384 U.S. 202, 204, 86 S.Ct. 1394, 1395, 16 L.Ed.2d 474 (1966).

▌ Thus, the Jones Act itself does not define its jurisdictional reach. Personal jurisdiction under the Act is governed by the due process minimum contracts test enunciated in *Shaffer v. Heitner,* 433 U.S.

186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1951). Subject matter jurisdiction under the Act is more complex. Cases arising under the statute indicate that courts have conducted a two-pronged inquiry to determine whether a claim brought pursuant to the Jones Act presents a "federal question" within the meaning of 28 U.S.C. § 1331. First, the Court should determine whether the defendant is an employer within the meaning of 42 U.S.C. § 688, *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). If the defendant is found to be an employer subject to the Act, the Court must then make an inquiry as to the choice of law applicable in the case at bar. If United States law would not be applied to the action, then the Jones Act does not apply and there exists no federal question jurisdiction. *See Rhoditis, supra; Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Dracos v. Hellenic Lines, Ltd.,* 705 F.2d 1392 (4th Cir.1983); *DeMateos v. Texaco, supra.*

Clearly, in this case, Hellenic is an "employer" within the meaning of the Jones Act. Hellenic employed plaintiff as a seaman and regularly conducted the maritime business in the United States. Determining whether Hellenic is subject to American law presents a more difficult question.

In *Lauritzen, supra,* the Supreme Court identified seven factors which the court should consider in determining whether the Jones Act is applicable. These factors are:

1. The place of the wrongful act;
2. The law of the ship's flag;
3. The allegiance or domicile of the injured seaman;
4. The allegiance of the shipowner;
5. The place where the shipping articles were signed;
6. The inaccessibility of a foreign forum;
7. The law of the forum.

345 U.S. at 586–90, 73 S.Ct. at 930–32. In *Rhoditis, supra,* the Supreme Court added the eighth factor to be considered in determining the applicable law and consequently, whether federal jurisdiction exists under the Jones Act. The eighth factor is a shipowner's base of operations.

In weighing these eight factors, the Supreme Court in *Rhoditis* which involved a suit by a Greek seaman against this defendant, Hellenic, the same defendant found in this litigation, concluded that Hellenic was a Jones Act employer and that the federal District Court in Alabama (273 F.Supp. 248 (S.D.Ala.1967)) as affirmed by the Fifth Circuit, 412 F.2d 919 (5th Cir.1969) was correct in applying United States law, *i.e.,* the Jones Act, to the case notwithstanding the fact that the seaman's contract of employment provides that Greek law and a Greek collective-bargaining agreement should apply to all the seaman's claims and that such claims should be adjudicated in the courts of Greece. The *Rhoditis* Court stated:

> We see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act 'employer'.

> The flag, the nationality of the seaman, the fact that his employment contract was Greek, and that he might be compensated there are in the totality of the circumstances of this case minor weights in the scales compared with the substantial and continuing contacts that his alien owner has with this country. If...the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States.

398 U.S. at 309, 90 S.Ct. at 1734.

In *Lauritzen,* the Court, writing 20 years before *Rhoditis,* had placed particular emphasis on the nationality of the ship on which plaintiff served when injured and on the nationality of the plaintiff and the de-

fendant shipowner. In *Lauritzen,* all three factors pointed to Denmark. In *Rhoditis,* the Supreme Court held, as had the district court and the Fifth Circuit, that the Greek flag flown by Hellenic ships was entitled to little weight under the circumstances because it was merely a facade for the defendant shipper's actual base of operations and allegiance since Pericles, Hellenic's owner, had lived in New York for 25 years and directed Hellenic's operations from there. Thus, *Rhoditis* and *Lauritzen* instruct this Court to examine the realities of the litigation in applying the eight choice-of-law factors.

As the Supreme Court noted in *Rhoditis,* "the *Lauritzen* test, however, is not a mechanical one. We indicated that the flag that a ship flies may, at times, alone be sufficient. The significance of one or more factors must be considered in light of the national interest served by the assertion of Jones Act Jurisdiction. Moreover, the list of seven factors in *Lauritzen* was not intended as exhaustive." 398 U.S. at 308. 90 S.Ct. 1734.

In *Lauritzen,* the Court noted:

> Until recent times . . . the nationality of the ship was that of its owners. But it is common knowledge that in recent years a practice has grown, particularly among the shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries. Confronted with such operations, our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places upon them.

345 U.S. at 587, 73 S.Ct. at 931 (footnotes omitted)

In the instant case, then, this Court must look to the realities of the situation and weigh the contacts with the United States according to the eight factors enunciated by the Supreme Court.

■ Although a greater number of the *Lauritzen-Rhoditis* factors point to Greece, the more significant *Lauritzen-Rhoditis* factors point to the United States. As heretofore noted, the vessel on which the accident occurred flew the Greek flag. The plaintiff seaman is a Greek, the shipping articles were signed in Greece, the Greek courts would apparently be open to the plaintiff and he could there maintain some type of action seeking recovery for his personal injuries. However, the accident occurred in the port of New York. Furthermore, the allegiance of the shipowner is a mixture of Greek and American. Gregory resides in both New York and Piraeus. Plaintiff has shown substantial business activity by Hellenic in this country. Plaintiff has also proved that Hellenic and Gregory have a base of operations in the United States and that Hellenic has substantial dealings in commerce affecting the United States. Under these circumstances, where the important factors of accident situs and defendant's base of operations weigh in plaintiff's favor, this Court, applying *Lauritzen* and *Rhoditis,* finds that plaintiff has carried his burden of showing by a preponderance of the evidence that jurisdiction exists in this matter.

There is a question, however, as to what effect should be given to the findings of fact in *Rhoditis,* decided in 1970. The Supreme Court found Hellenic—the same Hellenic which is also the defendant in this case—to be subject to suit in U.S. Courts because of its substantial base of operations in the United States. Plaintiff contends that *Rhoditis* collaterally estops the defendant from contesting this Court's subject matter jurisdiction of this case unless Hellenic can show changed circumstances sufficient to dissolve the collateral estoppel effect of the *Rhoditis* decision. Defendant contends that since 13 years have passed, *Rhoditis* no longer has estoppel effect and that plaintiff retains the burden to show that subject matter jurisdiction exists. In the recent Fourth Circuit case, *Dracos v. Hellenic,* 705 F.2d 1392 (4th Cir.1983), two judges on the panel agreed with defendant's position. Judge Murnaghan dissented and adopted plaintiff's view. While the decisions of Circuit Court panels outside the Third Circuit are ordinarily highly per-

suasive to this Court, they are not binding precedent as are decisions rendered by the Third Circuit. Upon serious reflection of the problems presented in this litigation, this Court finds that Judge Murnaghan's dissent enunciates the applicable rule which gives the *Rhoditis* decision a presumptive collateral estoppel effect regarding this Court's subject matter jurisdiction of Jones Act claims against Hellenic. Hellenic may rebut this presumption by producing evidence of changed circumstances that would have altered the Supreme Court decision in *Rhoditis*. However, Hellenic has not produced sufficient evidence to support its claim that circumstances have changed since 1970. Therefore, this Court cannot see any reason to reach a conclusion different than that reached applying the eight factors set forth in *Lauritzen* and *Rhoditis*. Hellenic avers that the death of Pericles is such a changed circumstance. However, as heretofore noted, his son Gregory now runs the company from a substantial base of operations in New York, spending forty (40%) percent of his time in New York, where he regularly meets with officials of the Hellenic American to coordinate their joint endeavors. Under these facts, the defendant's attempt to use the creation of Hellenic American as a corporate veil to shield it from the jurisdiction of the United States courts does not constitute a changed circumstance sufficient to rebut the presumption based upon the Supreme Court's findings in *Rhoditis*. Defendant contends that the passage of 13 years since the *Rhoditis* decision overcomes the presumption created by the findings of fact in *Rhoditis*. This court, however, disagrees. The passage of time, without more, is not sufficient to overcome the presumption created by *Rhoditis*. As heretofore noted, the defendant has not shown sufficiently changed circumstances regarding Hellenic. This Court therefore has determined that it has jurisdiction in this action based on the eight factors enunciated in *Lauritzen* and *Rhoditis* as well as on the basis of the defendant's failure to present sufficient evidence to overcome the effect of the collateral estop-

pel created by the findings of fact in *Rhoditis*.

Hellenic has also contended that this Court should dismiss plaintiff's complaint on the basis of previous litigation on the ground that there has already been a full adjudication of the matter in the courts of Greece. Plaintiff denies this, contending that the Greek litigation was a criminal proceeding that is required in some circumstances under Greek law to investigate injuries aboard ship. A translation of the opinions of the Greek trial and appellate courts as well as a transcript of a portion of testimony given at the trial, is inconclusive. The records submitted by the defendant refer to the proceedings as "criminal" but refer to plaintiff Soterios as a "civil complainant". This court has reviewed these submissions and determined that it is unclear how the Greek proceedings were commenced, by whom they were commenced, and what was decided by the courts of Greece. Since defendants have filed a motion to dismiss accompanied by exhibits, this court shall treat it as a motion for summary judgment. However, the exhibits submitted by the defendants themselves can be read in contradictory ways. Under these circumstances there exists a genuine dispute as to material fact which requires that this court deny defendant's motion for summary judgment on the basis of comity for the courts of Greece.

The principle of international comity has been recognized by the United States Supreme Court. *See Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). *See also, Somportex Ltd. v. Philadelphia Chewing Gum,* 453 F.2d 435, 440 (3d Cir.1971), cert. den., 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *Restatement (Second) of Conflicts,* § 98 (1971).

In *Guyot,* the Court stated:

[W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial

administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the systems of law under which it was sitting or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment be tried afresh, as on a new trial or appeal, upon the mere assertion of the party that the judgment was erroneous in law or fact.

159 U.S. at 202–03, 16 S.Ct. at 158–159.

The Supreme Court has noted that foreign proceedings concerning the subject matter of litigation in the U.S. Courts are to be closely examined by our courts but that U.S. Courts need not automatically defer to the findings of a foreign tribunal where the scope of its decision is unclear or where granting preclusive effect to the foreign proceeding would work an injustice against the parties before the American court. Comity has been termed "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Banco National de Cuba v. Sabbatino,* 376 U.S. 398, 409, 84 S.Ct. 923, 930, 11 L.Ed.2d 804 (1964), quoting *Hilton v. Guyot.* In the instant case, the nature and holding of the Greek proceeding simply is too unclear to permit this Court to use the Greek proceeding as a basis for either entering judgment in favor of the defendant or dismissing plaintiff's complaint. The Court will therefore schedule a hearing on this matter for the purpose of determining whether the proceedings in the courts of Greece bar this litigation.

The parties have also filed two motions relating to discovery. Because of the Court's Order from the bench at the June 9 hearing (requiring the parties to conduct discovery concerning the issue of subject matter jurisdiction) and this Court's decision on the motions to dismiss, the discovery motions have become moot and will therefore be dismissed. An appropriate order will be accordingly entered.