**Maria DRACOS, as Administratrix of the Estate of Nicholas Dracos, deceased, Appellant,**

**v.**

**HELLENIC LINES, LIMITED, a corporation, Appellee.**

No. 81–1870.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1983.

Decided May 9, 1985.

Avram G. Adler, Philadelphia, Pa. (Anne E. Fialkowski, Adler, Barish, Levin & Creskoff, Philadelphia, Pa., C. Arthur Rutter, Jr., John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellant.

Carter B.S. Furr, W.L. Berkley, III, Norfolk, Va. (Jett, Agelasto, Berkley, Furr & Price, Norfolk, Va., on brief), for appellee.

ON PETITION FOR
REHEARING EN BANC.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge.

This appeal presents to us the principal issue of what, if any, collateral estoppel effect facts previously found which underlie the choice of law in a maritime tort action should have in resolving a similar choice of law issue in a later action. Also involved is whether there are sufficient American contacts to require a choice of the law of the United States. The district court refused to give collateral estoppel effect to prior cases and concluded that the law of the United States did not apply. On the basis of this choice of law, the district court further concluded that it lacked subject-matter jurisdiction and granted the defendant's motion for judgment notwithstanding the verdict. We affirm.

**350**

## I.

Nicholas Dracos was the chief engineer aboard the M/V HELLENIC STAR. He was last seen alive on May 14, 1977, when the ship was berthed in Norfolk, Virginia. Later that day, members of the crew found Dracos dead in the ship's refrigerator hold.

Maria Dracos, the widow of Nicholas Dracos and the administratrix of his estate, filed suit on account of the death of her husband against Hellenic Lines, Ltd., which was his employer and the ship's owner. The complaint asserted causes of action for damages on account of negligence under the Jones Act, 46 U.S.C. § 688, and for unseaworthiness under the general "American Maritime Law," apparently as a pendent claim. See *Romero*, infra, 358 U.S. p. 380, 79 S.Ct. p. 484.

Throughout the course of this action, the defendant contested the district court's jurisdiction on the ground that the law of the United States did not apply. The defendant raised the issue of the applicability of foreign law in its answer and reiterated its position in its pretrial statement of issues and in various motions. Because it believed that Greek law determined the rights and liabilities of the parties, the defendant also asserted that the plaintiff's causes of action did not arise under the laws of the United States and thus the plaintiff had failed to state a jurisdictional basis for her suit. After the jury returned a plaintiff's verdict, the defendant moved for judgment n.o.v. Upon considering this motion, the district court concluded that neither federal law nor general maritime law of the United States applied in this case. The district court thus found itself to be without jurisdiction and entered judgment for the defendant.[1]

## II.

■ Federal courts are courts of limited jurisdiction; their jurisdiction will not be presumed. *Lehigh Mining & Manufacturing Co. v. Kelly*, 160 U.S. 327, 337, 16 S.Ct. 307, 311, 40 L.Ed. 444 (1895). Accordingly, plaintiffs must affirmatively plead the jurisdiction of the federal court. FRCP 8(a)(1); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Of course a federal court has jurisdiction to inquire into its own jurisdiction, *Romero v. International Terminal Co.*, 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368 (1959), and the district court did just that in the case at hand.

■ The plaintiff concedes, as she must, that she had the burden of showing such facts that would lead the court to choose American law. Therefore, the plaintiff's burden of proving jurisdiction was principally a burden to show that the court must choose American law, for on its choice of law its jurisdiction depended.

In *Lauritzen v. Larsen*, 345 U.S. 571, 583–90, 73 S.Ct. 921, 928–32, 97 L.Ed. 1254 (1953), the Supreme Court enumerated seven factors to be considered in choosing the

---

1. We have not had urged upon us and do not decide any effect *The Bremen* and *Mercury Coal* cases, infra, should have upon our decision, but note that if the rules followed in those cases apply here the result would be the same. We also note that in *Lauritzen*, infra, 345 U.S. at 589, 73 S.Ct. at 931, the Court recognized that a contractual choice of law should generally control the parties' rights and duties, unless public policy requires otherwise. While *Rhoditis*, infra, did not in terms address the contractual choice of forum question, it could have been raised in that case. Whether there is any inconsistency between *Rhoditis* and *The Bremen*, the Supreme Court has not decided.

In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972), decided after *Rhoditis*, infra, the Court upheld a forum selection clause in an international contract in an admiralty case, even though it would result in the application of foreign law in a foreign court. It held that forum-selection clauses are prima facie valid and should be enforced unless they are unreasonable under the circumstances. Id. at 10, 92 S.Ct. at 1913. *The Bremen* involved causes of action in contract and in tort, and the Court placed a heavy burden of proof on the party claiming that the particular controversy was not one in mind when the parties contracted. Id. at 17, 92 S.Ct. at 1917. *The Bremen* has been followed, in this circuit and elsewhere, in cases not involving international contracts or suits in admiralty. See *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.*, 696 F.2d 315, 317 (4th Cir.1982).

proper choice of law to govern a maritime tort: (1) the place of the wrongful act, (2) the law of the flag, (3) the allegiance or domicile of the injured seaman, (4) the allegiance of the defendant shipowner, (5) the place of the execution of the employment contract, (6) the inaccessibility of the foreign forum, and (7) the law of the forum. The Court explained that like factors guide choices of law in light of the interests of the governments and national interest involved. Id. at 582, 73 S.Ct. at 928. They also determine the applicability of both the Jones Act and general maritime law. Romero, supra, 358 U.S. at 382, 79 S.Ct. at 485. The Supreme Court has also said that these seven factors are not exhaustive and that they should not be applied mechanically. Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 308–09, 90 S.Ct. 1731, 1733–34, 26 L.Ed.2d 252 (1970). The Rhoditis Court added other factors to be considered in choosing the proper law. The presence of the foreign shipowner's base of operations within the United States was an important factor in making the Jones Act apply to a foreign seaman's tort claim. 398 U.S. at 309, 90 S.Ct. at 1734. Additionally, it was held that the substantial and continuing American contacts of Hellenic Lines had to be considered. 398 U.S. at 310, 90 S.Ct. at 1734.

The district court in the case before us carefully considered these factors. The defendant shipowner and employer was a Greek corporation. Its vessels flew the Greek flag and were registered under Greek law. Both the plaintiff and her husband were Greek citizens and domiciliaries. The contract of employment between Nicholas Dracos and the defendant was drafted and executed in Greece as a collective bargaining agreement of the Panhellenic Seaman's Federation. The contract made Greek law in Greek courts control the rights and liabilities arising from the employment relationship. Maria Dracos had remedies available in a Greek court had she chosen to seek them.

The district court found that only two of the Lauritzen factors pointed to the selection of American law. Nicholas Dracos died while the M/V HELLENIC STAR was berthed in Norfolk, and his widow sued in the United States District Court for the Eastern District of Virginia. As the district court correctly noted, these two factors are relatively unimportant in a maritime context. Because a ship may travel through waters governed by various nations, the test of lex loci delicti would introduce an untoward uncertainty in which standards apply. Romero, supra, 358 U.S. at 384, 79 S.Ct. at 486; Lauritzen, supra, 345 U.S. at 583, 73 S.Ct. at 928. The nature of maritime commerce is such that a vessel will inevitably have contacts with many different nations. If the courts of each nation with substantial contacts applied their own law, the overlapping duties imposed on shipowners would blight maritime shipping. Lauritzen at 581, 73 S.Ct. at 927. And as is often the case with maritime torts, the place of the wrong in this case was fortuitous. Romero 358 U.S. at 384, 79 S.Ct. at 486.

The filing of suit in federal court is also immaterial unless this country has a significant interest in having its law applied. See Lauritzen, supra, 345 U.S. at 590–91, 73 S.Ct. at 932. An American interest can be most readily made out when the two most important Lauritzen factors, the ship's flag and the shipowner's allegiance, point to this country. Lauritzen, supra, at 584–87, 73 S.Ct. at 929–30. And in Rhoditis the Supreme Court decided that an analysis should take into account substantial and continuing American contacts. Rhoditis held that when the shipowner, although a foreign corporation, had its base of operations in the United States and had substantial and continuing contacts with this country, then American law applied in a maritime tort action. Rhoditis, supra, 398 U.S. at 310, 90 S.Ct. at 1734.

In concluding that American law did not apply in this action against the same party defendant sued in Rhoditis, the district court examined the evidence of the defendant's operations and contacts with the United States. The court found the

evidence insufficient to show an American base of operations or substantial enough American contacts to require an application of either the Jones Act or general American maritime law. These findings are factual and are not clearly erroneous. FRCP 52(a). It also concluded that earlier cases in which federal courts determined that American law applied in cases involving Hellenic Lines had no collateral estoppel effect.

### III.

■ In the district court, the plaintiff relied on a number of cases, in which Hellenic Lines had been involved in the federal courts, to support its theory of offensive collateral estoppel. On appeal it does not rely on any of them except *Rhoditis*, which we will discuss later, and *Vassalos v. Hellenic Lines*, 482 F.Supp. 906 (E.D.Pa.1979). *Vassalos* does not serve as an estoppel because there was no choice of law question decided in that case.

In *Rhoditis* the Supreme Court held that the defendant was subject to American law based on a finding that the shipowner had its base of operations in the United States and had substantial and continuing American contacts. Those findings, however, concern the defendant's operations only at the time of the *Rhoditis* case. The *Rhoditis* Court did not purport to find that the defendant had its operations permanently based in this country or that its American contacts would continue indefinitely. Twelve years elapsed between the injury to Rhoditis and the death of Dracos.

The plaintiff in this action, who was neither a party nor in privity with a party to the *Rhoditis* litigation, asserts that she does not bear the burden of proving that the defendant had an American base of operations or substantial continuing American contacts because of the effect of the findings in *Rhoditis*. This is her principal claim on appeal.

The plaintiff's assertion is made possible by the discard of the doctrine of mutuality. That doctrine prevented a party from using a prior judgment to estop an adverse party from contesting an issue unless both parties were bound by the judgment. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328, 91 S.Ct. 1434, 1442, 28 L.Ed.2d 788 (1971). *Blonder-Tongue* approved in a patent case a defensive use of collateral estoppel, which in that case was a defendant's attempt to estop the relitigation of an issue that the plaintiff had already unsuccessfully litigated in a suit against another defendant. *Blonder-Tongue*, however, was a prelude to the offensive use of collateral estoppel by which a plaintiff may seek to estop a defendant from relitigating an issue previously litigated and lost to another and different plaintiff.

In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court sanctioned the use of offensive collateral estoppel. *Parklane* approved a plaintiff's estoppel of a defendant from litigating an issue the defendant had previously lost in a suit against another and different plaintiff. In doing so, however, the Court granted district courts "broad discretion to determine when it should be applied." *Parklane* at 331, 99 S.Ct. at 651.

■ In the instant case, the plaintiff's attempt to preclude the defendant from relitigating the issue of the location of its base of operations or the substantiality of its American contacts is its claim to the use of offensive collateral estoppel.[2] The district court considered the propriety of allowing the defendant to be so estopped, and concluded that the doctrine should not apply. In refusing to apply the doctrine, the court reasoned at one place that earlier adjudication reflected the status of the defendant only as it existed several years prior to the accrual of the cause of action

---

**2.** We should say at this point that the issue presented to us was not presented to the district court in quite the same context. We have examined, for example, the briefs filed with respect to the motion for judgment n.o.v. and do not find any reliance on *Parklane*. And that case is not relied upon here although its application is the controlling authority.

(twelve years between *Rhoditis* and the instant case, and ten years in the only other case on point). We think the district court's holding that the doctrine did not apply to the defendant is not an abuse of its broad discretion in view of the lapse of time.

We do not hold that the approach taken by the district court in this case is obligatory in each case, only that the approach it took was within its discretion. The approach a district court takes may well vary depending upon the facts of each case and such factors, for example, as lapse of time, as here. If the facts upon which choice of law and thus jurisdiction is based are fixed and subject to little or no change, then a district court may be within its discretion not to permit an effort to show change. On the other hand, if the facts upon which jurisdiction is based are inherently subject to change, then a district court may be justified in giving the prior finding no preclusive effect. Because the district court applied no presumption here, we have no occasion to consider whether or not any presumptive effect exists on account of the *Rhoditis* finding, and we lay down no general rule to be followed except that a district court may, within its discretion, examine the facts surrounding jurisdiction, determine whether they are fixed, or changing, or subject to change, and then ascertain what effect a prior finding has in each case. In the case at hand, the changing nature of the industry involved and the 12-year lapse of time indicate that the district court's action was consistent with the flexible approach we think should be taken although it did not denominate it as such. For a good discussion of the various aspects of this issue, see Wright, Miller and Cooper, *Federal Practice and Procedure* (1981), § 4417.

The dynamic nature of the shipping industry, with its constantly changing economic climate and regularly changing fleets, ports, and operations, indicates a changing factual situation that may require the choice of American law under *Lauritzen* and *Rhoditis* one year but may not require the same choice some years later.

The district court pointed out in its opinion relevant facts with respect to base of operations and American contacts proved to have existed at the time of *Rhoditis* which the plaintiff did not prove continued to exist at the time of the injury or trial in this case. That is an additional reason for us to find that the district court did not abuse its discretion in declining to apply collateral estoppel to the facts necessary to make a choice of law upon which its jurisdiction depended. The case of *International Shoe Machine Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449 (1st Cir. 1963), is persuasive here. In that case, offensive collateral estoppel was claimed under § 5 of the Clayton Act, 15 U.S.C. § 16, which established a kind of statutory offensive collateral estoppel well prior to the *Parklane* decision. The statute permits a final judgment or decree in favor of the United States to be used as prima facie evidence by any other party as to all matters to which the defendant would be estopped in another action by the government. The court held that offensive collateral estoppel did not apply because the first judgment related only to the period embraced by the evidence adduced at the first trial. 315 F.2d at 457. Unless it is shown that the condition found at a first trial is so permanent as to be unlikely to be disturbed, then we think offensive collateral estoppel may not be used with respect to that condition unless it be shown that the facts upon which the condition was based continued to exist. Such facts were not shown here, as the opinion of the district court pointed out.

We are thus of opinion the district court did not err in its choice of law upon which its jurisdiction depended, and its judgment is

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting.

In dissent following a rehearing *en banc*, I have little to add to my dissent at the panel level appearing in *Dracos v. Hellenic*

*Lines Ltd.,* 705 F.2d 1392, 1397 (4th Cir. 1983). I should point out two things, however:

A. The statement that Greek law should apply made in the contract between Hellenic and the seaman is put forth by the majority as a factor somehow distinguishing the Supreme Court decision in *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 318, 90 S.Ct. 1731, 1738, 26 L.Ed.2d 252 (1970), the case which creates in my judgment an offensive collateral estoppel. For one thing, however, Hellenic delayed far too long in seeking to raise the point. Second, and more importantly, such a choice of law provision also appeared in the contract involved in *Rhoditis,*[3] yet was not given the effect the *en banc* majority attributes to it. Hence the provision calling for application of Greek law appearing in the Dracos contract hardly suffices as a basis for distinguishing *Rhoditis.*

B. There is solace in the reasoned assessment by United States District Judge Raymond J. Broderick in *Papaioannoiu v. Hellenic Lines, Ltd.,* 569 F.Supp. 724, 728–29 (E.D.Pa.1983) of the issue which separates the majority and me:

> Upon serious reflection of the problems presented in this litigation, this Court finds that Judge Murnaghan's dissent enunciates the applicable rule which gives the *Rhoditis* decision a presumptive collateral estoppel effect regarding this Court's subject matter jurisdiction of Jones Act claims against Hellenic.... The passage of time, without more, is not sufficient to overcome the presumption created by *Rhoditis.* As heretofore noted, the defendant has not shown sufficiently changed circumstances regarding Hellenic. This Court therefore has determined that it has jurisdiction in this action based on the eight factors enunciated in *Lauritzen* and *Rhoditis* as well as on the basis of the defendant's failure to present sufficient evidence to overcome the effect of the collateral estoppel

created by the findings of fact in *Rhoditis.*

I am authorized to state that PHILLIPS, J., joins in this opinion.

HARRISON L. WINTER, Chief Judge, dissenting.

I dissent for the reasons expressed in the dissenting panel opinion, *Dracos v. Hellenic Lines Ltd.,* 705 F.2d 1392, 1397 (4 Cir. 1983), and for the reasons expressed by Judge Murnaghan in dissenting from the opinion of a majority of the in banc court.

---

**3.** Justice Harlan, dissenting, stated "In the case before us, there is no reason to disregard either the law of the flag or *plaintiff's contractual undertaking to accept Greek law as controlling*

....'' (Emphasis supplied). Yet the majority of the Supreme Court did determine that there was a reason to disregard the contractual undertaking to accept Greek law as controlling.